was the finding of fact by the learned justice at special term, and we approve such finding.

Interest should be allowed on the amount drawn out of the bank at 6 per cent. from the time it was drawn, and the judgment must be modified in this respect. The amount drawn out was $2,850.64, and it was drawn on January 24, 1894. As thus modified, the judgment should be affirmed, without costs of this appeal to either party. All concur.

(70 App. Div. 279.)

UNITED NAT. BANK OF TROY v. WEATHERBY et al.

(Supreme Court, Appellate Division, Third Department.  March 5, 1902.)

1. TRUSTS—BANK ACCOUNT—DEPOSITING TRUST FUNDS.

In a contest between an administratrix, an insurance company, and a navigation company over a decedent's bank account, it appeared that the account was in the name of deceased and one who was or had been his partner in an "insurance and brokerage business," the "insurance" consisting of collecting premiums on insurance policies as agents, and the "brokerage" of handling other people's property for a commission. By the agreement between deceased and his partner, deceased, having entire control of the business, was to render his partner yearly statements thereof, and no personal debts were to be made by either party to be charged against insurance premiums of the creditor. It further appeared that deceased had deposited in the account various premiums belonging to the defendant insurance company, and also the proceeds of certain drafts collected for the navigation company. After an alleged dissolution of the firm, deceased continued the deposit in the firm name. *Held*, that the account was impressed with a trust in favor of the two companies in so far as it appeared that their funds went with it, giving them, in the absence of any other trust claimants, a claim against it to the exclusion of all the world.

2. SAME—WITHDRAWALS AND RESTORATION.

The fact that deceased at various times, and without the consent of either of the companies, drew on the account so as to reduce it below the amount of the trust funds therein deposited, and thereafter made up the deficiency with other funds, did not destroy the trust character of the account, since the account, having once become impressed with the trust, must have continued so until the trust was discharged, and all deposits therein were declarations by the depositor that they were impressed with such trust.

3. SAME—IDENTITY OF TRUST FUNDS.

The withdrawals and restorations did not operate to extinguish the identity of the trust funds originally deposited, since, the withdrawals being wrongful, the wrongdoer would be presumed to have intended the subsequent deposits as a restoration of the amounts wrongfully withdrawn, and the companies had a right to adopt these acts done for their benefit so as to entitle them to the funds so restored as against all the world, unless it appeared that the money used in making such restoration belonged to some one other than the depositor.

4. SAME—COURT'S RIGHT TO DISPOSE OF FUNDS—POSSIBILITY OF OTHER CESTUIS QUE TRUSTENT.

It not appearing either by the complaint or any of the answers or by the facts in the case that there were any persons interested in the funds who had not been made parties to the action, the right of the court to dispose of the funds in controversy was not affected by the possibility of there being other cestuis que trustent entitled to share in such funds.

5. Same—Firm Assets—Application.

It appearing that deceased dealt with the navigation company in the firm name, that company was entitled to payment out of the trust funds as against the creditors and administrators of deceased, upon the ground that firm assets must be first applied to firm debts.

6. Same—Deficiency in Trust Funds—First Deposit and First Withdrawals—Disposition of Funds.

It appearing that the amount at deceased's death was insufficient to pay both companies in full, and it further appearing that the first money deposited in the account belonged to the insurance company, such company would have to bear the deficiency to the extent of such first deposit, as against the navigation company, the rule in such cases being that the first withdrawals are chargeable to the first money paid in.

7. Same—Disposition—Deposits after Death of Trust Depositor—Administratrix.

Moneys turned over to the bank and credited to the account after death of deceased, except so far as they appeared to have been paid for the express benefit of the companies, were not impressed with the trust, and hence should be paid to the administratrix of deceased.

Appeal from special term.

Action by the United National Bank of Troy against Catherine Ida Weatherby, administratrix, and others. Plaintiff making no claim to the funds involved, a judgment of interpleader was entered by consent, and the funds paid into court. From a judgment determining the respective claims of defendants to such funds, the administratrix and Travelers' Insurance Company appeal. Modified.

Appeal from a judgment of a special term of the supreme court declaring the interest of the several defendants in a fund of $1,240.89, deposited in plaintiff's bank in the name of "Weatherby & Wilbur." The plaintiff makes no claim to the fund, and the contention is between the defendants. A judgment of interpleader having been entered by consent, the said $1,240.89 has been paid into court. The defendant Catherine Ida Weatherby claims the money as administratrix of Nelson L. Weatherby, who died October 5, 1898. The Travelers' Insurance Company claims a portion of the funds, viz., $418.64, and interest; $313.64 having been collected as premiums on policies of insurance and as agent of the company by Nelson L. Weatherby in his lifetime, and $105 having been collected by the administratrix since his decease. James C. Wilbur appeared, but made no answer. He is the Wilbur named in the firm name of Weatherby & Wilbur. The International Navigation Company claims $360.08 as avails of drafts sold which were by the company remitted to Weatherby & Wilbur for sale as brokers, the money realized on sale to be returned to the company. The special term, on stipulation of parties as to the facts, decided that the International Navigation Company was entitled to have the full amount of its claim and interest from October 5, 1898, paid out of the fund. The court further decided that the Travelers' Insurance Company bore the relation of "creditor to Weatherby," and neither the insurance company nor James C. Wilbur was entitled to any share of the fund. The court further found that Catherine Ida Weatherby as administratrix, was entitled to the balance of the fund, and judgment was accordingly directed, with costs in favor of the administratrix, against the Travelers' Insurance Company. From this judgment the Travelers' Insurance Company and the administratrix appeal.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Henry W. Smith, for appellant Travelers' Ins. Co.

James B. Eagan, for appellant administratrix.

Shaw, Bailey & Murphy, for respondent United Nat. Bank.

Hun & Johnston, for respondent International Nav. Co.

King & King, for respondent Wilbur.

KELLOGG, J.   Beyond doubt the claims of the International Navigation Company and of the Travelers' Insurance Company are for moneys held in a trust capacity.   Weatherby held them as agent. Hence the decision of the trial court that the relation between Weatherby and the Travelers' Insurance Company was only that of debtor and creditor requires a reversal of the judgment, or a modification of it, if it appears that the Travelers' Insurance Company is entitled as cestui que trust to any portion of the fund.

It does not seem to admit of doubt but that the Travelers' Insurance Company is entitled to the $105 (less commissions) collected after the death of Weatherby by the administratrix and forming a part of this fund.   As to the $313.64 collected in the lifetime of Weatherby, its recovery in this action depends upon whether the proof is sufficient to warrant a finding that it now forms a part of this fund.   It is an admitted fact that in small sums, on different days in the months of August and September, 1898, this was deposited and was made a part of a fund in the plaintiff's bank, kept under the name of "Weatherby & Wilbur."   It is also admitted that the $360.08 claimed by the navigation company was in like manner deposited by Weatherby in this fund during the month of September, 1898.   The fact is admitted also that Weatherby died October 5, 1898, and at that time the fund kept in bank, and designated "Weatherby & Wilbur," amounted to $724.87,— a little more than enough to satisfy these two claims, not allowing interest.   It is admitted that at all times prior to and on the 1st day of September, 1898, this fund had been kept and was then more than sufficient to satisfy the then deposits on account of these two companies; that on September 2, 1898, by reason of withdrawals by Weatherby on that day without the knowledge of either of the companies, the fund was reduced below a sum needed to discharge these claims; that on September 6, 1898, he made the fund good by restoration, and continued the same good until September 17, 1898; that between September 6th and September 17th Weatherby received and deposited in this fund $290.26 of navigation company's money and $199.63 of Travelers' Company's money, and the fund on that date was more than sufficient to satisfy their claims; that on September 17th, without the knowledge of either company, Weatherby by withdrawals again reduced the fund below the sum needed to discharge these claims; that during the succeeding five days he restored the money so that on September 22d the fund was again in excess of the united claims of these companies; that on the 23d of September Weatherby, by withdrawals without the knowledge or consent of either company, again reduced the fund below what was needed to satisfy these two claims, and subsequently made restoration, so that at the time of his death, on October 5, 1898, the fund amounted to $724.87.   This seems to be the admitted history of this fund.

I think it may be accepted as an uncontroverted fact in the case that deposits by Weatherby in the name of "Weatherby & Wilbur" constituted a trust account.   The business was in the nature of a trust business.   The agreement of March 9, 1898, between Weatherby & Wilbur, which is set forth in the complaint, is claimed by the adminis-

tratrix to have been a dissolution of that firm.    However that may be, it is there stated that the business was "doing an insurance and brokerage business in the city of Troy."    The other undisputed facts show that the "insurance" was only the collection of premiums on insurance policies as agents, and brokerage was the handling of other people's property as brokers for a commission.    The agreement was to continue this business.    Moreover, the agreement fairly contemplated a separate account and no mixture of funds.    "No personal accounts or debts to be made by either party to be charged against the business, or in such manner that the same be presented as an offset against insurance premiums of the creditor."    Then the provision that "at the end of each year the said Weatherby shall render a full account of the business" required a separate account.    Again, the law against the mixing of trust moneys with other moneys requires a separate deposit account; and the fact that this account was so kept in bank by Weatherby after the so-called "dissolution" seems conclusive that it was intended to represent, and did represent, a trust account,—the depository of trust money received by Weatherby.    The fact that Weatherby on occasion, either inadvertently or intentionally, drew out money from this account for improper uses, does not destroy the trust character of the account itself.    Once the depository of trust money, it must be regarded as continuing so, and the money found in it must be taken as impressed with a trust until the trust is discharged. If we are right in assuming that this was a trust account, the act of Weatherby in every instance in making deposits in this account was a declaration on his part that such deposits were impressed with a trust. And there is no evidence in this case of any deposit therein by Weatherby of any money other than trust money, and the express admission by all the parties that this account was the depository of the money held in trust for these two companies, it seems to me, leaves no room to question that this was exclusively a trust account.    It could not have been more so if the account had been designated "Weatherby, Agent."    The only confusion that can be claimed, then, is that which arises from the mingling of trust funds with other trust funds, and this claim is one which the various cestuis que trustent can determine among themselves in the first instance; for the creditors of Weatherby, or the administratrix representing them, can have no interest in the fund until the various trusts are discharged.

The claim is made by the administratrix that the several withdrawals and restorations made by Weatherby in his lifetime operated to extinguish the identity of the money originally deposited belonging to these companies.    The complete answer to that, it seems to me, is that such withdrawals were wrongful, whether intentional or inadvertent, and presumptively the wrongdoer by making subsequent deposits intended to make restoration and right the wrong.    Under such circumstances, the cestuis que trustent have a right to adopt these acts done for their benefit, and as against all the world besides the act of restoration is conclusive until at least it is shown that the money used to make restoration belonged to some one besides the wrongdoer.    The act of restoration impressed the restored funds with the same trust which attached to the money originally deposited.

This, if we correctly interpret the opinion of the court, was so held in Baker v. Bank, 100 N. Y. 31, 2 N. E. 452, 53 Am. Rep. 150. That was a case of deposits of proceeds of sales on commission made by Wilson & Bro. in the name of "Wilson & Bro., Agents." The court held that this fund could not be reached by a creditor of Wilson & Bro., though that creditor was the bank itself, and the court, by Andrews, J., says the bank "could not appropriate the debt of Wilson & Bro., even with their consent, to the prejudice of the cestui que trust." The court further says, as to these deposits not being in fact the proceeds of sales of goods of their principals: "Conceding that Wilson & Bro. used the specific proceeds for their own purposes, and their identity was lost, yet when they made up the amounts so used, and deposited them in the trust account, the amounts so deposited were impressed with the trust in favor of the principals, and became substituted for the original proceeds, and subject to the same equities." This was, in effect, held by the court of appeals at an earlier date (Van Alen v. Bank, 52 N. Y. 1); and was followed in Gerard v. McCormick (Com. Pl.) 8 N. Y. Supp. 860.

We are lead to the conclusion, therefore, that, in the absence of other claimants than the creditors of Weatherby or the administratrix, the $724.87 constitutes a trust fund, which is applicable, by the direction of the court in this action, to the discharge of the claims of these two companies. Nor do I think that we are embarrassed by any suggestion that there may be other cestuis que trustent entitled to share in this fund, and not here represented. A similar suggestion was made in Baker v. Bank, supra, and it was there disposed of by the court saying: "The objection for defect of parties was not taken in the answer, and, moreover, it does not appear that there are any unsettled accounts of Wilson & Bro. with any other person or persons for whom they were agents." This case, so far as the complaint and several answers and stipulation of facts go, precludes the suggestion that there are other persons interested who have not been made parties to this action.

So far as the claim of the International Navigation Company goes, it might be supported on the grounds that Wilbur was, as to that company, a copartner of Weatherby, and the money collected and deposited in name of Weatherby & Wilbur was copartnership money, and first applicable to the discharge of this company's claim. The contention that the stipulation, by fair construction, is an admission that this company had knowledge of any dissolution,—if there was one in fact,—and that the company dealt with Weatherby as an individual, is refuted by the receipts for the drafts, and the letters with which the drafts were forwarded. As to the Travelers' Company, there is no question but it dealt with Weatherby alone as its agent. Wilbur, under the written agreement of March 8, 1898, has a right to insist that these moneys arising from the business shall be used to discharge the obligations of the business first. If there were any surplus, it would be in the nature of profits, one-half of which would have to be applied for his benefit. This right of Wilbur any creditor of the firm may claim to be subrogated to, and so work out the application of the copartnership effects to the discharge of the creditor's claim.

I do not, however, deem it necessary that the navigation company should exercise its right to these moneys on that theory. I think it is plain that both of these companies are entitled to this fund because it is impressed with a trust for their benefit.

While the money paid into court amounts to $1,240.89, that portion of this which was turned over to the bank after the decease of Weatherby is not impressed with any trust by reason of any declaration or act of restoration on the part of Weatherby; hence only that portion, other than the $724.87 actually identified as trust money, can be taken by either of these companies. That portion is $9.80 of navigation company's money, and $78.75 (being $105 less agents' commissions) Travelers' Insurance Company's money.

The judgment must therefore be modified by directing that of the $1,240.89 deposited in court there be first paid the sum of $360.08 to the International Navigation Company, and $392.39 be paid to the Travelers' Insurance Company; that the International Navigation Company and the Travelers' Insurance Company are each entitled to costs of the action and costs of this appeal; that the balance, of said $1,240.89, less the said taxable costs allowed to each of the companies and lawful commissions, be paid over to the administratrix, Catherine Ida Weatherby. All concur.