McFADDEN SECURITIES CO. v. STONELEIGH GARAGE, Inc., et al.

No. 5215.

Court of Appeals of the District of Columbia.
Argued Nov. 5, 1931.
Decided Jan. 18, 1932.

**1026**

Walter B. Guy, Frederic B. Warder, and Arthur J. Hilland, all of Washington, D. C., for appellant.

Raymond B. Dickey and Henry I. Quinn, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant, which we shall call Securities Company, filed a bill in the Supreme Court of the District of Columbia against Stoneleigh Garage, Inc., which we shall call Stoneleigh, M. O. Exnicios and Edward C. Kriz, as receivers of Consolidated Garages, whom we shall call receivers, and J. T. Exnicios, R. E. Potter, and C. L. Bess, individually. The bill charges that Stoneleigh, doing business in Washington, purchased of Peerless Motor Company four automobiles under a conditional sales contract dated 2d of July, 1924, under which it promised to pay the balance of the purchase price, amounting to $10,000, in 12 regular monthly installments; that the defendants J. T. Exnicios, Potter, and Bess guaranteed payment in accordance with the contract; that Securities Company, in due course, purchased the contract for value, and was the holder thereof; that $2,000 had been paid, and $8,000, with interest from August 2, 1924, was due; that possession of two of the cars was transferred by Stoneleigh to Consolidated, and one of the other two to M. O. Exnicios, the other to Potter; that receivers had acknowledged the validity of the conditional sales contract and had made several efforts to dispose of the automobiles with the understanding that the proceeds would be applied on the notes, but that nothing had been paid on account thereof. The bill prayed, therefore, that a lien be declared on the automobiles and a receiver appointed to take, hold, and sell them under direction of the court and pay the proceeds on account of the debt, and for a money decree for any balance due under the contract and guaranty. Potter, one of the individual defendants, in November, 1925, filed a motion to dismiss, which was overruled, and in December, 1925, an answer admitting the guaranty and alleging that the four automobiles in question were transferred by Stoneleigh to Consolidated, and that the latter had delivered one of the cars to him, one to the receiver M. O. Exnicios individually, and that the other two were then in possession of the receivers of Consolidated, but by way of defense alleging that Securities Company had released its lien on the automobiles by filing and proving a claim for the deferred purchase price before the auditor in the equity cause in which M. O. Exnicios and Kriz had been appointed receivers for Consolidated. He also claimed that this action of Securities Company released him from his obligation as guarantor of the contract. J. T. Exnicios, another of the individual defendants and the father of the other Exnicios, one of the receivers, likewise filed an answer, as did also the two receivers. On February 12, 1926, the trial court, in a short memorandum opinion, without passing on the question of the liability of the guarantors, expressed the view that Securities Company, in filing a claim before the auditor in the equity cause of Consolidated, had made an election of remedies, and had lost the benefit of the security which it held on the automobiles under the terms of the reserve title contract, and on the same day entered an order denying the prayer for appointment of receivers to hold and sell the automobiles. Securities Company's motion for a rehearing was denied in March, 1926, and from then until December, 1929, for no reason that we can see, nothing was done to advance the cause, and in December, 1929, a final decree was entered dismissing the bill, and from that decree this appeal is taken.

■ The denial of relief apparently was grounded on the filing by Securities Company of an affidavit in the equity suit then pending in the Supreme Court of the District in which receivers had been appointed for Consolidated, which then held two, with undoubted control of the other two, automobiles. This affidavit set out briefly the terms of Securities Company's claim against Stoneleigh, with copy of its contract reserving title and a statement of the amount due thereunder. There was no claim made in the affidavit against the fund in the hands of the receivers. The writing itself was nothing else than a circumstantial statement of the debt. There was no waiver of the lien on the automobiles and the guaranty of Exnicios, Potter, and Bess, but, on the contrary, an assertion of it. In point of fact, it was notice to the auditor, who was stating the receivers' account, of the state of Securities Company's claim

against the automobiles then in receivers' possession, and there was not, as was true in Grand Rapids v. Machine Co. (C. C. A.) 5 F. (2d) 812—however the auditor and the trial court regarded it—a prayer that the balance of the purchase price be allowed as a claim against the estate. The guarantors not being parties to that cause, no relief was asked against them or could be.

We are of opinion that the conclusion of the lower court that the filing of this affidavit was an election by Securities Company to look solely to the fund in the receivers' hands for the payment of its debt, and was a waiver of its right to reclaim the automobiles or to a lien against the proceeds of their sale or of its claim against the guarantors, was erroneous. As was said by Mr. Justice Clarke in the case of Friederichsen v. Renard, 247 U. S. 207, 213, 38 S. Ct. 450, 452, 62 L. Ed. 1075: "At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended." To apply it in the present case in the present circumstances would be to extend it beyond the point to which it has ever been carried, so far as we are advised, and to sacrifice admitted rights to mere form. But there is still another reason why we think the dismissal of Securities Company's bill erroneous.

■ The contract sued on, among other things, provides that upon default the holder may take possession of the property and sell it at public or private sale, and from the proceeds of the sale, after paying expenses, apply so much as remains and is necessary to the payment of the debt, and the balance, if any, to the debtor, and that, in the event of a deficiency, judgment for it may be had. Such an instrument, while imposing upon the vendee the duty to discharge the purchase price in full and reserving title in the vendor, is essentially in its nature a mortgage in which a lien is retained for the payment of the purchase price, and so we have already held in Ballinger v. West Publishing Co., 44 App. D. C. 49, that in such a case the seller may elect to consider the property as security for the payment of the balance due and sue in equity and subject the property to the lien thus created and have judgment against the vendee for any deficiency. That was the scope and object of the instant suit.

Securities Company had a debt against the purchaser of the automobiles, Stoneleigh, and perhaps against Consolidated as well, for the latter operated and controlled the former, and was to all intents and purposes the same corporation. This control enabled Consolidated to obtain possession of the automobiles on which Securities Company had a valid subsisting lien, but with notice of same. The court in the equity cause against Consolidated had taken possession of the automobiles, and they were then in its hands through its receivers. Securities Company was therefore in a position where it could, and we think should, assert its rights to the automobiles in that proceeding without in any way releasing the obligation of maker or guarantor of the debt, or, conversely, it might assert its claim against its primary debtor without waiving its rights against the guarantors of the debt or surrendering its lien on the cars. This is true because the holder of the contract had both a lien against the cars and a claim against the maker of the contract as well as against the guarantors. The assertion of this right against the one cannot be regarded as inconsistent with the subsequent assertion of the right against the other. In such a case the holder would have a right to pursue all his remedies until his debt is paid in full—this because the rights are independent and not conflicting and the assertion of the one does not exhaust the other. In Smith v. Gilmore, 7 App. D. C. 192, the rights of a third party had intervened.

■ The doctrine of election, where it applies at all, applies only to a case where one assumes an inconsistent position, or where, through his action, other rights have arisen as to which he should be estopped to take a contrary position. It is never applicable where, as here, a creditor has a right to pursue more than one remedy. We are, therefore, of opinion that the filing of the affidavit is not a bar to the prosecution of this suit, and, if this were all, we should stop at this point.

■ But we are constrained, as the result of our examination of the record before us, to call attention to a matter which we think should not go unnoticed. From it we reach the conclusion that Stoneleigh and Consolidated were in effect but a single corporation. The former purchased four automobiles and secured the unpaid purchase price by a conditional sales contract which the seller required to be guaranteed by the three individual defendants. This contract and guaranty was in due course acquired by Securities Company. Stoneleigh transferred the automobiles to its alter ego, Consolidated, and that company, becoming insolvent, was placed in the hands of receivers. One of the auto-

1028

mobiles was taken, either then or shortly before insolvency, by one of the receivers, M. O. Exnicios, without consideration to either Stoneleigh or Consolidated then or thereafter, and was held and used by him until he turned it in as his own property in part payment of another car. Another of the automobiles was turned over by the receivers, or with their consent, to Potter, one of the guarantors of the conditional sales contract, likewise without consideration, and, at the time of hearing below, was still in his possession. The other two were at some time or other held by the receivers, and we are unable to say from the record what subsequently transpired with relation to them, though appellee's brief intimates they were disposed of by proper decree. That a receiver of the assets of an insolvent should not use the property coming into his hands as such receiver is of course so fundamental that to suggest it is to reprobate it. Not only is it violative of every principle of law, but is contrary to every standard of morals and good conduct. Any other rule would necessarily lead to scandal and reproach upon the administration of justice.

Who is responsible for the conditions which we have adverted to we are unable to determine. Appellant was a party to the receivership proceedings, at least to the extent of bearing the obligation of bringing these matters to the attention of the court. Instead it stood by, did nothing, and allowed the estate to be closed and the cause ended and dismissed. The receivers, on the other hand, were apparently of opinion that, since the debt for the automobiles was guaranteed by Potter and the elder Exnicios, as a consequence of which they might have to pay the debt, they were entitled to the automobiles. In other words, by some imaginary process of subrogation, notwithstanding they were then contesting their liability and notwithstanding they never discharged the debt, the lien on the cars passed to them, and entitled them to possession, but no claim of this nature was ever made by any pleading in the cause, or, so far as we can determine, was ever brought to the attention of the court. For all that appears, the delivery and use of the cars and their ultimate loss to the estate was the act of the receivers, and is shown for the first time in the record before us.

For the reasons we have stated, we think the decree appealed from should be reversed, and the cause remanded to the Supreme Court of the District, with instructions to reinstate the bill and to proceed thereafter in accordance with this opinion.

The acts of the receivers, to which we call attention, will doubtless have the attention which the circumstances may require.

Reversed.

HITZ, Associate Justice, took no part in the decision of this case.