**BROWN et al. v. CHRISTMAN et al.**

No. 7781.

United States Court of Appeals for the District of Columbia.

Decided Feb. 9, 1942.

Mr. Edmund D. Campbell, of Washington, D. C., with whom Messrs. Jaquelin A. Marshall and Edward A. Beard, both of Washington, D. C., were on the brief, for appellants.

Mr. James M. Earnest, of Washington, D. C., with whom Mr. W. Gwynn Gardiner, of Washington, D. C., was on the brief, for appellees. Mr. Raymond S. Norris, of Washington, D. C., also entered an appearance for appellees.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Jesse H. Hedges was a real estate broker in the District of Columbia. Among other things his business included the collecting of rents for various property owners. It was Hedges' established practice to deposit all rental money, which he collected, in an account standing in the name of Jesse H. Hedges Rent Account. From time to time he would draw checks upon this account, payable to the several property owners whom he represented, for the moneys which he had collected, after making deductions for expenses and other charges. Hedges died on February 9, 1938. At the time of his death he owed to property owners, on account of rents collected in January and February, 1938, an amount approximating $21,000; but the total amount in the special rent account was only $2,795.41. Following Hedges' death, Anna S. Christman was appointed administratrix of his insolvent estate. The money in the special rent account was transferred to her and she holds it separate and apart from the other assets of the estate.

Appellants are property owners for whom Hedges collected rents and to whom at the time of his death he was obligated to pay approximately $10,500; one-half of the total for which he was obligated, to property owners, on account of rent collec-

tions. Appellants, as plaintiffs in the District Court, sued the administratrix to impress a lien upon the fund of $2,795.41, and to have it distributed to them pro rata. Anna S. Christman filed an answer and a counterclaim. Following a trial, the District Court dismissed the complaint and the counterclaim, both with prejudice. No appeal was taken from the judgment dismissing the counterclaim. Each of the various contentions tried by the District Court and urged on this appeal, depends upon additional facts which can be best analyzed in connection with each respective contention.

Appellants rely, first, upon an alleged equitable assignment, pro tanto, of the special fund. In our opinion the District Court correctly held to the contrary. The court found that shortly before his death, Hedges sent to each of the plaintiffs a rental statement covering the receipts and disbursements for their respective properties; and forwarded to each of them his check drawn on the rent account. The total of these checks was far in excess of the balance in the account. All of them were deposited for collection, and payment of each was refused by the bank because of the death of the maker. It is conceded that under the applicable section of the District of Columbia Code,[1] which is Section 189 of the Uniform Negotiable Instruments Law, the mere delivery of a check without more does not operate as an equitable assignment, even as between drawer and drawee. To establish "something else"[2] be-

---

[1] D.C.Code (1929) tit. 22, § 306, id. (1940) § 28—1007: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

[2] It has been held that an equitable assignment may be shown by evidence that the parties to the transaction intended the check to transfer ownership to a part or the whole of the fund upon which drawn. Fourth Street Bank v. Yardley, 165 U.S. 634, 644, 17 S.Ct. 439, 41 L.Ed. 855. Circumstances which were held sufficient to establish such an agreement have been found where it was thought unreasonable to suppose that the payee would grant a loan on the unsecured credit of the maker and the latter represented that it had funds in the drawee bank adequate to meet the check, id., 165 U.S. at page 651, 17 S.Ct. 439, 41 L.Ed. 855; where a check given by

the lessee to his lessor was for the entire amount of a deposit entitled "Rent Account," Green v. Brown, Tex.Civ.App., 22 S.W.2d 701, 703; where a check for the entire amount on deposit was accompanied by an assignment and delivery of the deposit slip, Hove v. Stanhope State Bank, 138 Iowa 39, 44, 115 N.W. 476, 478; where a check delivered as a gift causa mortis was for the entire amount on deposit, Varley v. Sims, 100 Minn. 331, 340, 111 N.W. 269, 271, 8 L.R.A., N.S., 828, 117 Am.St.Rep. 694, 10 Ann. Cas. 473; and where, pursuant to an agreement between the maker and the payee, of which the bank had notice, a special deposit was made to meet the checks in question. People's Nat. Bank v. Swift, 134 Tenn. 175, 182, 183 S.W. 725, 727. See generally, Brannan's Negotiable Instruments Law (5th Ed. by Beutel, 1932) 1078–1080; Aigler, Rights of Holder of Bill of Exchange Against the Drawee, 38 Harv.L.Rev. 857, 870; Notes, 5 A.L.R. 1667, 50 A.L.R. 403, 408.

yond mere delivery of the checks, reliance is placed upon an alleged understanding between Hedges and appellants concerning the rent account; and to prove that understanding appellants rely upon one of the findings made by the District Court, which reads as follows: "4. The said Earll [a real estate broker], *acting for and on behalf of said plaintiffs* respectively, turned said rent accounts of said plaintiffs over to said decedent *upon an understanding between him and each of said plaintiffs* that the rents collected from all of the said properties were to be kept by said decedent in a separate account, out of which disbursements were to be made; and also upon the further understanding that the said Earll would have the right to make withdrawals of funds from said special account in the event of the disability or incapacity of said decedent, in order to fully protect the interests of said plaintiffs." [Italics supplied] The first clause of finding No. 5 lends color also to appellants' contention. It reads: "5. Accordingly such an account was opened * * *." But the most that can be said for appellants is that these findings are ineptly and ambiguously worded. While, standing alone, they might suggest an agreement by Hedges to set up a special account for the sole use and benefit of appellants, the rest of the record reveals clearly that there was no such understanding. Finding No. 5 goes on to say that Hedges, in the course of his business "deposited *all rents* collected on behalf of the property owners whom he represented, *including* all of the plaintiffs herein, in said account; * * *." [Italics supplied] Again, it will be noted that on September 26, 1940, fourteen days after the findings were filed, appellants stipulated: "The business practices of the decedent referred to in paragraph 2 of the Findings of Fact had been followed by the decedent *for some years prior* to the time he had any relations with the plaintiffs." [Italics supplied] The finding referred to in this stipulation is set out in the margin.[3] It is apparent therefrom that the special account had been set up by Hedges some years prior to his dealings with Earll, and to his employment by appellants. Moreover, appellants' contention is further met by the eighth finding of the District Court, which reads as follows: "8. During the period involved in this case said decedent acted as rental agent for more than thirty different property owners, including the plaintiffs herein; and all rents collected by the decedent on behalf of said owners were indiscriminately commingled and deposited in said rent account." There was, therefore, no showing sufficient to remove the case from the rule of Section 306, and the District Court properly so held.

Appellants contend, in the alternative, that they are entitled to impress an equitable lien upon the fund in the special account because the moneys therein "were essentially the property of the plaintiffs and other property owners similarly situated." In Boss v. Hardee,[4] this court stated the applicable rule as follows: "Undoubtedly, the rule is that when a landlord's agent receives rent money from the tenant, he receives the landlord's money, and unless the relation of debtor and creditor is created by agreement express or implied, the agent is trustee for the landlord and not his debtor." The rule as thus stated finds support in the Restatements, both of Agency[5] and of Trusts.[6] The maintenance, by Hedges, of a separate bank account, appropriately entitled "Rent Account," was a proper discharge by him as an agent, of his duty to conserve the funds;[7] and was sufficient to

---

[3] "2. It was the established practice of said decedent in the conduct of his business to deposit all moneys collected as rentals for and on behalf of the various property owners whom he represented in an account standing in the name of 'Jesse H. Hedges Rent Account' in the McLachlen Banking Corporation in said District; and from said account he would from time to time draw checks payable to the various property owners whom he represented, for the moneys which he had collected by way of rentals from their respective properties after making deduction for expenses and other charges."

[4] 70 App.D.C. 50, 53, 103 F.2d 751, 754.

[5] Restatement, Agency (1933) § 423, comment a.

[6] Restatement, Trusts (1935) § 8, comment f: "A person may be at the same time both an agent and a trustee for the same person. If an agent is entrusted with the title to property for his principal, he is a trustee of that property." See also, 1 Scott, Trusts (1939) § 8, p. 65.

[7] Restatement, Agency (1933) § 422, comment d: "An agent who has possession of money for the principal is under a duty to keep it in a safe place. Unless the agent is supplied with facilities for keeping money, ordinarily he is both

segregate them in trust.[8] Neither is there any reason to infer that he acted improperly in commingling the funds of the various property owners in a single account, properly earmarked.[9] Moreover, further evidence of trusteeship appears from the fact that Hedges maintained a separate personal banking account. How long this account had existed does not appear. It is significant in this respect that while the findings—assisted by the stipulation previously referred to—reveal the existence of the Jesse H. Hedges Rent Account for a number of years prior to, as well as during the period involved in the case, finding No. 10 states, merely, that: *"At the time of his death* said decedent likewise maintained a personal account in addition to said rent account, *which contained the sum of $31.-43."* [Italics supplied] The significance of this finding lies in the facts revealed by the seventh finding, which reads: "Said decedent never physically withdrew his 5 per cent commission from said rent account, but merely made a bookkeeping entry of his credits on account of commission. *He used said rent account indiscriminately during the period in question in order to pay his household and office expenses, premiums on life insurance and the like."* [Italics supplied] These uses were clearly inconsistent with trusteeship of the funds and if they had been consented to by appellants, expressly or by implication, were sufficient to prevent the existence of a trust.[10] There is nothing in the findings to indicate whether appellants consented to such inconsistent uses or had any knowledge thereof. But appellees stipulated—following the filing of findings—that they were unknown to appellants until after the death of Hedges. This being true it is obvious that there was no consent, express or implied. The facts thus far analyzed, therefore, in the light of the Boss case, reveal a trust fund properly segregated, rather than a debtor-creditor relationship.

Appellees insist, however, that appellants have failed to trace the trust funds into the rent account or to show that funds in the hands of the administratrix have been augmented by trust funds. As to the first point, it was admitted by appellees and found by the court that all rents collected by Hedges were deposited in the rent account.[11] The court also found as follows: "14. At the time of his death said decedent was obligated to pay plaintiff for rents collected in January and February, 1938, including plaintiffs' said checks sued on herein in an amount approximating $10,500; and he was obligated to pay other property owners for rents collected in January and February, 1938, and not disbursed in an amount approximating $10,500." It is idle to contend, in the face of these findings, that the trust funds were not traced into the rent account. What happened to them thereafter is more uncertain. On January 4, 1938, according to his checkbook, Hedges had in the rent account only $97.56. On or about that date he received from appellee, Anna S. Christman, in her individual

---

privileged and required to deposit the money in a bank, * * *."

[8] Restatement, Agency (1933) § 398, comment b: "Ordinarily, an agent who receives money on account of the principal cannot properly place it to his own credit in a bank, where it may be subject to a set-off or lien by the bank, nor so mingle it with his own that there may be difficulty in tracing it. Unless so understood, an agent receiving money either as a trustee or a bailee is not privileged to change the right of the principal in the specific moneys received, or his right against a bank if they are deposited, into a debt claim against himself. The principal's trust is in the honesty and not necessarily in the solvency of the agent." See also, id. § 72, comment e and § 427, comment a.

Restatement, Trusts (1935) § 180: "Duty with Respect to Bank Deposits. While a trustee can properly make general deposits of trust money in a bank,

it is his duty to the beneficiary in making such a deposit,
* * * * *
"(b) properly to earmark the deposit as a deposit by him as trustee; * * *." See also, id. § 179, comment d.

[9] Restatement, Agency (1933) § 72, comment e: " * * * One collecting for a number of principals is normally authorized to mix their funds in one bank deposit, if he indicates that the deposits are made by him as a fiduciary. * * *" See also, id. § 398, comment c.

[10] Boss v. Hardee, 70 App.D.C. 50, 54, 103 F.2d 751, 755.

[11] "8. During the period involved in this case said decedent acted as rental agent for more than thirty different property owners, including the plaintiffs herein; and all rents collected by the decedent on behalf of said owners were indiscriminately commingled and deposited in said rent account."

capacity, the sum of $4,500, for the specific purpose of purchasing a deed of trust note. But, instead, Hedges unlawfully converted appellee's money and deposited it on January 4, 1938, in the rent account, together with an additional sum of $454.40. On January 15, 1938, the balance in the rent account was $460.21; and that was the lowest balance in the account between January 4, and February 9, 1938, the date of Hedges' death; at which time the balance was $2,795.41. It thus appears that Hedges deposited in the special account during January not less than $4,954.40; that he also deposited in the account, collections made in January and February amounting to $21,000, of which all, except $454.40 at least, was in addition to the $4,954.40 deposit of January 4. The $454.40 may have come from some other source than rents. Part of the $20,545.60, remaining from rent collections, may have been deposited before January 4, and part of it may have been deposited before January 15. It is fair to assume that the balance of $2,795.41 in the account on February 9, less the January 15 balance of $460.21, must have been made up of rent collections. The record fails to reveal any other source.

■■■ There is no evidence in the record to suggest that Hedges deposited any of his own money in the rent account—apart from his interest in the collections—during the period in question. The burden was upon the estate, therefore, to show that any part of the fund was not of a trust character.[12] Even if we should assume that Hedges made subsequent additions to the rent account, of his own funds,

the inference would be that such deposits were made by way of restitution.[13] The court found, and it is not disputed, that Hedges never physically withdrew his five per cent commission from the rent account; nevertheless, as long as the balance of the deposit is less than the aggregate of the trust funds, it is the beneficiaries' right, as against Hedges, to impress that balance with a lien for their claims, and to share the balance proportionately to their claims; regardless of the order of such withdrawals;[14] or the order of deposits.[15]

It seems clear, therefore, that when the $2,795.41 balance was transferred to the administratrix the funds in her hands were augmented by trust funds at least to the extent of $2,335.20. Appellants claim no more than this. They do not seek to trace, into the estate, funds withdrawn and dissipated by Hedges and they concede that $460.21 of the fund may be traceable to and belong in equity to Anna S. Christman.

■■■ Prior to this suit, appellants asserted their claims in an action on a bond given by decedent under an Act of Congress of August 25, 1937, entitled "An Act to define, regulate and license real estate brokers," etc.[16] Each appellant herein recovered in that action various sums on account of rents collected but never accounted for by decedent. Appellees insist that by taking this remedy appellants made an election which is inconsistent with the assertion of an equitable lien on the trust fund and, consequently, that the latter remedy is not now available to them. However, the Act provides that the aggrieved person's remedy against the surety shall be "in addition

---

[12] Israel v. Woodruff, 2 Cir., 299 F. 454, 457, citing National Bank v. Insurance Co., 104 U.S. 54, 26 L.Ed. 693; Long v. Earle, 277 Mich. 505, 526, 269 N.W. 577, 585.

[13] Restatement, Trusts (1935) § 202, comment m: "Where the trustee deposits trust funds in his individual account in a bank, and makes withdrawals from the deposit and dissipates the money so withdrawn, and subsequently makes additional deposits of his individual funds in the account, manifesting an intention to make restitution of the trust funds withdrawn, the beneficiary's lien upon the deposit is not limited to the lowest intermediate balance.

"Where the deposit of trust funds and of his individual funds was in an account in the name of the trustee as such, and not in his individual account, and he withdraws more than the amount of his

individual funds, and subsequently deposits his individual funds in the account, the beneficiary's lien upon the deposit is not limited to the lowest intermediate balance since the new deposit will be treated as made by way of restitution of the trust funds previously withdrawn." Cf. comment j. 3 Scott, Trusts (1939) § 518.1, p. 2486; Mitchell v. Dunn, 211 Cal. 129, 134, 294 P. 386, 388; United Nat. Bank v. Weatherby, 70 App.Div. 279, 284, 75 N.Y.S. 3, 6.

[14] Restatement, Trusts (1935) § 202, comment i; 3 Scott, Trusts (1939) § 519, p. 2488.

[15] Restatement, Trusts (1935) § 202, comment n; 3 Scott, Trusts (1939) § 517, pp. 2470, 2472.

[16] 50 Stat. 787, 789, D.C.Code (Sup. V, 1929) tit. 20, § 1974. id. (1940) § 45—1405.

to his right of action against the principal * * * ."[17] Nor is an action against a principal inconsistent with the assertion of an equitable lien against a trust fund.[18] As stated by this court: "The doctrine of election, where it applies at all, applies only to a case where one assumes an inconsistent position, or where, through his action, other rights have arisen as to which he should be estopped to take a contrary position. It is never applicable where, as here, a creditor has a right to pursue more than one remedy."[19] The remedies in this case are cumulative and nothing less than complete satisfaction of appellants' claims would operate as a bar.[20]

■ At this point it seems proper to say that the evidence presented in the District Court was insufficient for a proper determination of the case; and that some of the findings reflect, in their ambiguity, the confusion of issues and of facts with which the trial judge was confronted. This is made painfully evident by the stipulation which was entered into a few days after the findings were filed. It contains matter so vital as to be determinative of two issues presented on this appeal. The stipulation could have been presented as early as the pre-trial stage of the proceedings in the District Court; probably to the substantial advantage of all parties.[21] But it was not presented, even at the trial proper.

■ We note, also, the unexplained absence, as parties to this litigation, of other property owners who are entitled, presumably, equally with appellants, to participate in any proper distribution of the disputed fund.[22] If they are indispensable parties,[23] it would be no sufficient an-

[17] 50 Stat. 791, D.C.Code (Sup. V, 1929) tit. 20, § 1974, id. (1940) § 45—1405.

[18] Restatement, Trusts (1935) § 202, comment a, Illustrations 27 and 28; 3 Scott, Trusts (1939) § 517, p. 2470.

[19] McFadden Securities Co. v. Stoneleigh Garage, Inc., 60 App.D.C. 400, 402, 55 F.2d 1025, 1027. See also, United States ex rel. Warren v. Ickes, 64 App. D.C. 27, 32, 73 F.2d 844, 849.

[20] Cf. New Amsterdam Casualty Co. v. Iowa State Bank, 8 Cir., 1 F.2d 196, 199, certiorari denied, 258 U.S. 624, 42 S.Ct. 381, 66 L.Ed. 797.

[21] Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, enumerates simplification of issues and admission of facts as proper subject matter for pre-trial conference. In addition to reducing congestion of dockets, the importance of pre-trial procedure to the individual litigant by reducing expense and delay cannot be overemphasized. Laws, Pre-Trial Procedure, 1 F.R.D. 397, 399: "One of the vital, if not the outstanding, advantages of pre-trial procedure is to take the trials of cases out of the realm of surprise and maneuvering, whereby an unwary counsel might see the just case of his client lost. It may be romantic and charming to watch the skillful trial lawyer as he lies in wait to pounce upon an uninformed and less skillful counsel, but the results frequently are not just."; Sunderland, The Theory and Practice of Pre-Trial Procedure, 36 Mich.L.Rev. 215, 219: "Every issue which can in this way be withdrawn from the trial agenda will result in a net gain for all parties concerned. It will save time for the court and jury, save expense for the parties to the action, save trouble for the witnesses, diminish the risk of er-

ror by simplifying the proceedings, and reduce the labor and cost of an appeal by curtailing the size of the record. If the admissions go far enough, or the evidence is clear enough, no trial at all may be necessary." Such considerations are particularly important where, as in the present case, the amount involved is relatively small.

[22] See District Court finding No. 14, set out on p. 629 of this opinion. Restatement, Agency (1933) § 398, comment c: " * * * In this case, the principals at any given moment are tenants in common of the claim against the bank * * *."

[23] In Flynn v. Brooks, 70 App.D.C. 243, 244, 105 F.2d 766, 767, this court defined an indispensable party as one having an interest in the controversy of such a nature that a final decree cannot be made without affecting that interest. In Green v. Brophy, 71 App.D.C. 299, 301, 110 F.2d 539, 541, we said: "Indispensable parties have been defined by this court as 'All whose interests will be affected by the decree, that is, all persons materially interested either legally or *beneficially* in the subject matter of the suit * * *.'" [Italics supplied] Indispensable parties have been distinguished from parties whose presence would be necessary to a complete disposition of the issues in the case, but whose absence may, in the discretion of the court, be dispensed with when they are beyond the jurisdiction of the court and the decree may be so shaped as to protect their interests. Washington v. United States, 9 Cir., 87 F.2d 421, 425–428; Samuel Goldwyn, Inc. v. United Artists Corp., 3 Cir., 113 F.2d 703, 707. The courts of the United States tend to relax the rules as to the necessity for joinder.

swer that a decree entered in a case in which they were not parties, would not be res judicata as to them.[24] The facts which would be presented by these additional property owners might vary from the facts presented here. A disposition of the funds, made without giving them an opportunity to establish their claims, might be seriously prejudicial to their interests.[25] If they are indispensable parties it is our duty to protect their interests on this appeal, even though the question was not raised in the District Court;[26] and it will be the duty of the District Court to protect them in any further proceedings there. That court will be able to determine, upon a proper showing, whether the other property owners are indispensable parties.

The judgment and order appealed from must be reversed, and the case is remanded with directions to permit appellants, within thirty days from the entering of the judgment of this court herein, to amend their complaint by supplying such parties as are indispensable to their action and thereafter to proceed to a determination of the case in conformity with the views expressed in this opinion.[27]

Reversed.

---

Payne v. Hook, 7 Wall. 425, 431, 19 L. Ed. 260; Waterman v. Canal-Louisiana Bank and Trust Co., 215 U.S. 33, 48, 30 S.Ct. 10, 54 L.Ed. 80; Thomas v. Anderson, 8 Cir., 223 F. 41, 43; Oxley v. Sweetland, 4 Cir., 94 F.2d 33, 36; Atwood v. National Bank of Lima, 6 Cir., 115 F.2d 861, 863. This liberality in applying the rules as to necessary joinder is due in large measure to the exigencies of exercising jurisdiction based upon diversity of citizenship. Norton v. United Gas Corp., D.C.W.D.La., 1 F.R.D. 155, 161; Franz v. Buder, 8 Cir., 11 F.2d 854, 856, certiorari denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876.

Generally, where the action involves a determination of conflicting interests of beneficiaries in a trust fund, the beneficiaries are held to be necessary parties. In Carey v. Brown, 92 U.S. 171, 172, 23 L.Ed. 469, the Supreme Court has said: "The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the cestuis que trust as well as the trustees are necessary parties." Similarly, all persons with conflicting claims to a particular fund are said to be indispensable parties. United States v. Bank of New York & Trust Co., 296 U.S. 463, 480, 56 S.Ct. 343, 80 L.Ed. 331; Williams v. Bankhead, 19 Wall. 563, 86 U.S. 563, 571, 22 L.Ed. 184. In the state courts, it is generally held that: "Where a suit in equity has for its object the disposal of a trust fund, all known claimants of the fund must be made parties." Kendall v. Fidelity Trust Co., 230 Mass. 238, 240, 119 N.E. 861. Accord: Wickwire Spencer Steel Corp. v. United Spring Co., 247 Mass. 565, 569, 142 N.E. 758, 759; Callahan v. Federal Trust Co., 126 N.J.Eq. 311, 314, 8 A.2d 347, 348; Schuler v. Southern Iron & Steel Co., 77 N.J.Eq. 60, 74, 75 A. 552, 557; Smith v. Smith, Tex.Civ.App., 200 S.W. 540, 548; Hodge v. Joy, 207 Ala. 198, 204, 92 So. 171, 176; Sadowski v. Rykaczewski, 15 Del. Ch. 363, 365, 138 A. 619. Apposite to the case at bar is the reasoning in the case of Bank of California Nat. Ass'n v. Superior Court, 16 Cal.2d 516, 521, 106 P.2d 879, 883: " * * * where a number of persons have undetermined interests in the same property, or in a particular trust fund, and one of them seeks, in an action, to recover the whole, to fix his share, or to recover a portion claimed by him. * * * other persons with similar interests are indispensable parties. The reason is that a judgment in favor of one claimant for part of the property or fund would necessarily determine the amount or extent which remains available to the others. Hence, any judgment in the action would inevitably affect their rights."

[24] Green v. Brophy, 71 App.D.C. 299, 301, 110 F.2d 539, 541.

[25] See 3 Scott, Trusts (1939) § 519, pp. 2488, 2489.

[26] Flynn v. Brooks, 70 App.D.C. 243, 244, 105 F.2d 766, 767.

[27] See Rule 19(a), Fed.Rules Civ.Proc.; Franz v. Buder, 8 Cir., 11 F.2d 854, 857, 858, certiorari denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876; United States v. Bank of New York & Trust Co., 296 U. S. 463, 478, 56 S.Ct. 343, 80 L.Ed. 331.