**NEW ENGLAND MUT. LIFE INS. CO. v. BRANDENBURG et al. (two cases).**

District Court, S. D. New York.

May 5, 1948.

Baldwin, Todd & Lefferts, of New York City, for plaintiff.

Milbank, Tweed, Hope & Hadley, of New York City, for defendants.

KNOX, District Judge.

The two actions with which the court is here concerned seek the rescission of four life insurance policies that were issued by plaintiff upon the life of Jules Pachtman. The insured died on November 1, 1946, but no letters either testamentary or of administration have been issued to a representative of the decedent's estate.

The facts, so far as they presently appear, are these: In February of 1945, plaintiff issued its first policy to Pachtman. It was in the sum of $14,000 and the beneficiary originally named therein was Irma J. Pachtman, the wife of the insured. He, however, retained "the right of revocation."

In February, 1946, by an instrument in writing attached to the policy and made a part thereof, Pachtman revoked his former choice of a beneficiary and designated his creditor, Continental Commerce Corporation, in the place of his wife. This writing, in part, reads as follows:

"* * * to my creditor, the Continental Commerce Corporation, 30 Broad Street, New York, N. Y., its successors and assigns, hereinafter referred to as said creditor, as the interest of said creditor may appear, any amount received by said creditor in excess of the indebtedness to be paid by said creditor to the residuary beneficiary, my executors, administrators or assigns; the New England Mutual Life Insurance Company having no responsibility to see to the payment of any amount by said creditor to the residuary beneficiary, the Insurance Company to be discharged of all liability by payment of the proceeds to said creditor."

Thereafter, Pachtman wrote plaintiff and requested that the latter designation of a beneficiary be rescinded, and that Matthew H. Brandenberg should receive the policy's proceeds upon the insured's death. This change of beneficiary was never endorsed upon the policy, although the latter requires such action. The policy at this time was in the possession of Continental Commerce Corporation.

On the day of Pachtman's death, that company addressed a letter to plaintiff in which it said:

"We have a claim against the deceased * * * in an amount exceeding the insurance sum. In due time we will furnish you with a death certificate * * * We would also ask you to send us the necessary claim forms."

Shortly thereafter, plaintiff discovered evidence which it believes to be convincing, that the insured, in applying for the policy, materially misrepresented his then existing state of health.

It is said that Pachtman, in seeking the policy, had declared that the only illness from which he had suffered was a mild cold when, as a matter of fact, he was afflicted with a serious heart ailment of which he had full knowledge, and for which he had

been hospitalized. An abstract of the medical record of the Jewish Hospital of Brooklyn tends to support plaintiff's belief.

Two weeks prior to the expiration of the contestable period, provided by the policy, and on February 7, 1947, plaintiff brought suit against both Brandenberg and Continental to rescind its liability under the contracts.

Pachtman also had three other life insurance policies with plaintiff. These were issued in October, 1945, and February, 1946. Their total value is $16,000 and Brandenberg is the designated beneficiary. Plaintiff, on March 15, 1947, filed a separate bill to rescind these policies.

Plaintiff has moved for a joint trial of these two actions. Defendant, Continental, has made a cross-motion requesting that the complaint in the first action be dismissed, for plaintiff's failure to bring in an alleged indispensable party, namely, Pachtman's estate. If the cross-motion be granted, the motion for a joint trial will be moot. For this reason, the cross-motion will first be considered.

Whether Pachtman's estate is an indispensable party depends on whether it has the necessary "interest" within the intendment of Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Continental urges two reasons for the existence of such an interest—

(1) If the policy be upheld, the valid claims of the two defendants, Continental and Brandenberg, may not consume the entire $14,000. If so, the estate would be entitled to the excess. Although Brandenberg has been named as a defendant, Continental asserts that he has no valid claim because the designation under which he claims was never endorsed upon the policy. This position is taken by plaintiff, in its pleadings, as well as by Continental. Although Continental here contends that its own claim may not exhaust the face amount of the policy, it is conceded that Joseph Schell, Vice President of Continental, wrote the aforementioned letter of November 1, 1946 in which he stated that his firm claimed "an amount exceeding the insurance sum." However, Schell has presently

submitted an affidavit in which he states that while Continental claims $27,000, this figure represents a balance of a great number of small items, and that the validity of some of them was much disputed prior to Pachtman's death.

(2) According to Continental, "Even if the claim were liquid and undisputed, and if it were embodied in a final judgment in an amount exceeding $14,000 (all of which is not the case), the estate of the insured would still be an indispensable party. Continental holds the policy merely as pledgee, and whatever it recovers thereon will automatically reduce the insured's indebtedness to Continental." Pachtman's estate, it is argued, is indispensable because it has the interest of a pledgor.

Plaintiff, on the other hand, avers that the defendant's claims, in fact, do exceed the face amount of the policy, and that, in any event, by the terms of the designation, it is Continental and not plaintiff who is responsible for turning over any excess to the estate. Plaintiff further urges that the burden is on Continental to show that there will be a surplus for the estate. This burden, plaintiff continues, cannot be maintained, inasmuch as the Continental claim is admittedly for $27,000, almost twice the face amount of the policy, and that Continental should not be allowed to take a position inconsistent with its own claim.

Further, if Continental can attack its own claim, it can not maintain that Brandenberg will not receive any excess above the amount that is due to Continental. Both Continental and plaintiff here contend that the Brandenberg claim must fall because his designation, as a beneficiary, was not endorsed on the policy. This however, does not necessarily mean that the Brandenberg claim will fail.

Plaintiff goes on to say that Brandenberg has cross-claimed against Continental, alleging that the reason his designation was never endorsed on the policy is that Continental wrongfully withheld possession of the policy from the plaintiff so that no endorsement on it could be made.

It is not now necessary to determine whether, if plaintiff should be unsuccessful in this suit, there would be surplus funds available to which Pachtman's estate is entitled. The question of indispensable parties has often been before the courts. The leading case is Shields v. Barrow, 1854, 17 How. 129, 58 U.S. 129, 15 L.Ed 158. These decisions have established rules by which the present controversy must be decided. Such of them as are authoritative were not disturbed by Civil Rule 19.2, Moore's Federal Practice, p. 2146.

Due to the jurisdictional limitations of Federal Courts, cases frequently arise in which it is impossible to do complete justice because of the absence of parties whose presence is desirable. If the suit is dismissed, a wrong may be done to plaintiff. If the suit continues, a possible wrong may be done to the absent estate. In such a situation, the equities of the parties is the basic consideration.

Thus, in Shields v. Barrow, supra, indispensable parties were defined as "persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting this interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." In Parker Rust-Proof Co. v. Western Union Telegraph Co., 2 Cir., 1939, 105 F.2d 976, 979, certiorari denied, 308 U.S. 597, 60 S.Ct. 128, 84 L.Ed. 500, Judge Swan said:

"The doctrine that one whose interests will be affected by a decree must be made a party to the suit is an equitable doctrine, and a court of equity should not apply it, we think, where special circumstances would make its application inequitable."

This principle has been enunciated in many cases. Payne v. Hook, 1868, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260; Waterman v. Canal-Louisiana Bank Co. 1909, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Stuff v. La Budde Feed & Grain Co., D.C.Wis. 1941, 42 F.Supp. 493.

Upon this subject matter, Judge Learned Hand has said: "The decisions are numerous and complicated in the facts; from them it is impossible to extract any general rule." Roos v. Texas Co., 2 Cir., 1927, 23 F.2d 171, 172, certiorari denied 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001.

If it can be said that they conform to any one principle, I think it would be this: the courts are wary of the danger of permitting contradictory judicial orders being directed to a single fund, but are not so disturbed where the only possible inconsistency is that of two persons whose claims appear to be similar, one may ultimately recover and the other may not. Thus most frequently there must be a single fund or res involved before a court will rule that there are indispensable parties. Barney v. Baltimore City, 1867, 6 Wall. 280, 73 U.S. 280, 18 L.Ed. 825; Williams v. Bankhead, 1873, 19 Wall. 563, 86 U.S. 563, 22 L.Ed. 184; Gregory v. Stetson, 1889, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; Ducker v. Butler, 1939, 70 App.D.C. 103, 104 F.2d 236; Baird v. Peoples Bank & Trust Co. of Westfield, 3 Cir., 1941, 120 F.2d 1001, 136 A.L.R. 693; Brown v. Christman, 1942, 75 U.S.App. D.C. 203, 126 F.2d 625; Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 1940, 113 F.2d 703; Steingut v. National City Bank of N.Y., D.C.S.D.N.Y.1941, 38 F.Supp. 451; 2 Moore, supra, p. 2147.

Even where there is a single fund or res, the court will "strain hard" to find interests to be separable so that an action need not be dismissed. Bourdieu v. Pacific Western Oil Co., 1936, 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42; Bank of California, Nat. Ass'n v. Superior Court, 16 Cal.2d 516, 106 P.2d 879; Waterman v. Canal-Louisiana Bank Co., supra; Atwood v. National Bank of Lima, 6 Cir., 1940, 115 Fed.2d 861.

Continental's principal reliance is placed upon Shields v. Barrow, supra. State court construction of the rule on indispensable parties, is not controlling here. De Korwin v. First National Bank of Chicago, 7 Cir., 1946, 156 F.2d 858. Several cases citing the Shields decision, have enunciated as a general rule that in rescission actions all the parties to the contract are indispensable. Roos v. Texas Co., supra; Kentucky Natural Gas Co. v. Duggins, 6 Cir., 1948, 165 F.2d 1011. These cases, however, appear to be distinguishable from the facts now before the court. In each of them some specific fund or res was involved, and the court did not wish to permit inconsistent judgments to be entered against it.

Thus, in Shields v. Barrow, the suit was to rescind a contract of compromise. The plaintiff was the vendor of a plantation. The contract of compromise provided that plaintiff would retain ownership, retain certain payments made, and receive certain further payments in full satisfaction of all claims against the original vendee and the several endorsers of his notes. If suit to cancel the second contract could have been maintained in the absence of the vendee and some of the endorsers, the plaintiff might have been ordered to convey the land as to some of the endorsers, but not as to the others.

In Vincent Oil Co. v. Gulf Refining Co., 5 Cir., 1912, 195 F. 434, 436, another rescission action, the owner of an undivided one-half interest in an oil lease was held indispensable in a suit by a prior lessee to rescind the subsequent leases, the court remarking that, "The decree sought would interfere with the possession of the Producers' Oil Company." Hence, it was indispensable. In Kentucky Natural Gas. Corporation v. Duggins, supra, a particular gas and oil lease was involved. Cf. also Board of Trustees of Oberlin College v. Blair, 4 Cir., 1895, 70 F. 414.

Thus the cases where a rescission was sought do not deviate from what seems to be the guiding principle of this branch of the law. Inconsistent disposition, and not merely inconsistent obligation, continues to be the controlling consideration. In the present case, there is as yet no particular res or fund. Plaintiff's obligation is simply to pay a sum of money on death of the insured. Whatever rights Pachtman's estate may have under the policy run against plaintiff personally, and not against any fund in plaintiff's hands.

Further, the equities are decidedly with plaintiff. Continental urges that if the action is not dismissed, and plaintiff should prevail on the merits, the unseemly spectacle of a future suit by the estate upon new evidence in which the estate might prevail, is in prospect. Further, if this should come to pass, Continental's superior rights in the policy would be destroyed, because it would be bound by the prior adjudication.

On the other hand, if I were now to grant Continental's cross-motion, plaintiff would be compelled to pay over the face amount of the policy to one or the other of the present claimants, without any opportunity to litigate the merits of the fraud that is said to have been practiced upon it. In my judgment, it would, in view of the seeming misconduct of Pachtman, be most unjust merely because of the possibility that an absent party may hereafter have an adjudication that·is inconsistent with the one to be rendered in this suit, to grant the motion made by Continental. Whatever may be the result of the instant litigation, it will in no way prejudice or destroy the rights that may hereafter be asserted on behalf of Pachtman's estate. If it should come about that the estate should ultimately recover the face amounts of the policies, it is a matter that, for the moment, at least, is of no concern either to the defendants or the court. The risk, if any, is that of the plaintiff.

In March 1945, the insured's father and mother were living and also, one brother and one sister. In these circumstances, it would not be proper to require plaintiff to have an administrator appointed as a condition of the denial of this motion. Pachtman's estate is not an indispensable party. The cross-motion is denied.

It appears that the issues of law and fact in these two actions will be almost identical. Plaintiff desires a joint trial. Rule 42. Defendant, Brandenberg, has not opposed this motion, but Continental does.

The policy in the first suit was issued in February, 1945. Those in the second suit were issued October 1945 and February 1946. Continental is only interested in the first policy. Continental believes that plaintiff will seek to introduce testimony as to events between February and October, 1945 which would be relevant in the second action, but irrelevant and prejudicial in the first. It says also that if it objects to the admission of such evidence as against it, Section 149(4) of the New York Insurance Law, Consol.Laws, c. 28, will operate to render the testimony material. Section 149(4) reads in part as follows:

"If in any action to rescind any such contract or to recover thereon, any such misrepresentation is proved by the insurer, and the insured or any other person having or ·claiming a right under such contract shall prevent full disclosure and proof of the nature of such medical impairment, such misrepresentation shall be presumed to have been material."

The short answer to this argument is that if Section 149(4) does apply to an objection to testimony on the ground ·of irrelevancy, as well as to an objection of privilege, then it will operate against an objection taken at a separate trial as well as one taken at a joint trial. .But, beyond all this, these actions will be tried to a judge, and not a jury. It is to be presumed that he will conduct the trial in a manner that will in no wise prejudice the defendants. The motion for a joint trial is granted.