Vern L. **PADGETT** and **Investment Enterprises, Inc.**, Appellants,

v.

James **THEUS**, a/k/a Jim Theus, and Pearl Theus, Appellees.

No. 1260.

Supreme Court of Alaska.

May 10, 1971.

tion of the Alaska Bar approved by a vote of a majority of the members present at a meeting of the Association.

**698**

Albert Maffei, Anchorage, for appellants.

Helen L. Simpson, Anchorage, for appellees.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

Being land poor and pressed by numerous creditors, appellees Jim and Pearl Theus entered into a somewhat unusual contract with Earl Bell and appellants Vern L. Padgett and Investment Enterprises, Inc. Basically, the Theuses promised to convey 12 parcels of land to Investment Enterprises. Vern Padgett promised to lend Investment Enterprises $10,000. The corporation in turn promised to transfer one-third of its stock to the Theuses and to lend Jim Theus $10,000. Investment Enterprises further promised to transfer one-third of its stock to Earl Bell, for unstated consideration, and to transfer one-third of its stock to Vern Padgett.

Thereafter, the Theuses brought an action in superior court against Vern Padgett and Investment Enterprises claiming breach of contract and praying for rescission and reconveyance of the realty which they had transferred to Invesmtent Enterprises. In their complaint, the Theuses alleged that they had performed as promised, but that Padgett and Investment Enterprises had not. The latter, in their answer, admitted that the Theuses had performed as promised, but denied any breach on their part, claiming that a subsequent modification of the contract included a waiver of "strict enforcement" by the Theuses, and that no party had as yet defaulted under the contract as modified.

After trial to the court without jury, "partial" findings of fact and conclusions of law were entered. In its findings of fact, the trial court found that

[t]he property described was conveyed to the corporation. Vern Padgett did not advance to Investment Enterprises, Inc. any money to make the loan and Investment Enterprises, Inc. did not make a loan to Plaintiffs herein.

Regarding Padgett's and Investment Enterprises' assertion that a modification of the contract had been agreed to by the parties, the court further found that Pearl Theus had never agreed to any modification of the contract.[1] In its conclusions of

---

1. Padgett claimed that the parties agreed upon a deposit in a bank account in lieu of the promised loan to the Theuses. In regard to this contention, the trial court specifically found that "Pearl Theus never agreed to any such arrangement."

The trial court did find that Padgett had deposited $10,000 in a trust company in which he had an interest, but did not use the $10,000 as collateral for a loan to the Theuses. The court's findings also stated that Padgett had "done cer-

law, the court determined that the Theuses were entitled to a reconveyance of the 12 parcels because of a "partial failure of consideration." In granting this relief, the court reasoned that the $10,000 loan was the "principal consideration" upon which the Theuses promise to convey the realty was based.[2] In an "Amended Partial Judgment," the trial court ordered Investment Enterprises to transfer title to five of the parcels to the Theuses.[3] By a "Final Judgment," the court ordered that title to the remaining seven parcels be transferred to the Theuses.[4] Investment Enterprises and Vern Padgett now appeal from this final judgment.

Appellants contend that Jim Theus failed substantially to perform as promised by not disclosing liabilities and defects of title regarding several of the subject real properties; that this failure on the part of the Theuses led the parties to agree to a modification of the contract regarding the required performance of Padgett; and that in light of these factors the court's grant of rescission and restitution of the realty to the Theuses was inappropriate. Appellants also contend that due to the fact that Earl Bell was a party to the contract in question, he was an indispensable party and should have been allowed to litigate his interest in the case at bar.

We find no merit in the first of appellants' contentions. The trial court found that the Theuses had conveyed to Investment Enterprises the real property they were required to under the contract. Also relevant is the trial court's finding that Pearl Theus never agreed to a modification of the contract regarding Padgett's promised performance of a $10,000 loan.[5] Since our review of the record does not leave us with the conviction that these findings of fact of the trial court were clearly erroneous, we affirm the lower court's judgment which provided for restitution of the 12 parcels of realty to the Theuses and cancellation of a promissory note Jim Theus gave to Padgett pursuant to the contract.[6]

We now turn to the second and more troublesome issue in this appeal, namely, whether Earl Bell was an indispensable party to the action in question and, if so, whether the judgment should be set aside and the case remanded for a new trial in order that Bell be made a party and be afforded the opportunity of fully protecting his interests. Earl Bell was a party to the contract at issue; for unstated consideration Investment Enterprises promised to give him one-third of its stock. On the other hand, Bell was not made a party to the action, though he testified as a witness in behalf of Investment Enterprises

tain work in connection with the property, the reasonable value of which the Court will determine at a further hearing if the amount cannot be determined between the parties."

2. The trial court further concluded that: Defendant Vern Padgett has rendered certain valuable services to the Plaintiffs and is entitled to be reimbursed for the value of their services as a condition to restoration of the property * * * in order that all parties may be placed in status quo prior to the entry into the contract.

3. In the amended partial judgment, the court ordered that legal title to seven of the parcels "be held in the name of the corporation pending final adjudication of the claim of the defendants [for any valuable services performed for the benefit of the Theuses between the date of the agreement and the entry of the amended partial judgment] for the sole purpose of providing security for payment of any sum to be paid as restitution to defendants."

4. In its final judgment, the trial court noted that neither Padgett nor Investment Enterprises had filed a statement, in conformity with the amended partial judgment, in support of their claim that they had rendered valuable services to the Theuses after the contract had been finalized.

5. See supra note 1.

6. Alaska Foods, Inc. v. American Manufacturer's Mut. Ins. Co., Opinion No. 678 (Alaska, 1971).

and Padgett.[7] At no stage of the proceedings at the trial court level did Investment Enterprises or Padgett move to dismiss the action on the grounds that the Theuses had failed to join Bell as an indispensable party.[8] It is in this appeal that appellants have for the first time clearly raised the indispensable party issue.[9]

Ordinarily an issue which was not raised in the trial court will not be treated on appeal. Decisions under the federal rules, however, indicate that this court has the discretion nevertheless to treat indispensable party issues raised for the first time at the appellate level. It has been held that federal trial courts should treat indispensable party issues *sua sponte* when the parties fail to raise them, Hoe v. Wilson, 76 U.S. (9 Wall.) 501, 19 L.Ed. 762 (1870); that federal appellate courts may consider indispensable party issues not raised at the trial level, McShan v. Sherrill, 283 F.2d 462 (9th Cir. 1960); Brown v. Christman, 75 U.S.App.D.C. 203, 126 F.2d 625, 631–632 (1942); that federal appellate courts may even raise an indispensable party issue for the first time *sua sponte*, Haby v. Stanolind Oil & Gas Co., 225 F.2d 723 (5th Cir. 1955); that it is quite proper, however, to consider an indispensable party issue foreclosed on appeal if the party failed to assert it at trial, Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111, 88 S.Ct. 733, 19 L.Ed.2d 936, 945–946 (1968). Adopting these authorities, we think the case at bar presents an appropriate occasion to treat the indispensable party issue now asserted by appellants.

\*     \*     \*     \*     \*

MR. HOUSTON: \* \* \* Well, Your Honor, I'm curious about the status of—of Mr. Bell as a—as a party to the—to a rescission. Now, I always understood that \* \* \*.

THE COURT: He's not a party to any rescission.

\*     \*     \*     \*     \*

THE COURT: Well, of course I can't make any judgment of this Court run as against him. It runs against Mr. Padgett and the—Investment Enterprises, Inc.

\*     \*     \*     \*     \*

THE COURT: \* \* \* but—then perhaps the rescission might—he might have a—a line of—of defense that he'd like to develop in that regard in—in \* \* \*.

\*     \*     \*     \*     \*

THE COURT: \* \* \* that's an independ—that's an independent lawsuit too.

\*     \*     \*     \*     \*

THE COURT: \* \* \* Now, whether he has separate defenses that he would want to assert in the direct rescission action, of course, I can't foreclose him from presenting it at this time, but \* \* \*.

\*     \*     \*     \*     \*

THE COURT: \* \* \* and I think he'd have to obtain his own legal advice and seek his own \* \* \*.

\*     \*     \*     \*     \*

THE COURT: \* \* \* solution of the outcome of this matter \* \* \*.

---

7. Civ.R. 19(c) provides that:
   In any pleading in which relief is asked, the pleader shall set forth the names, if known to him, of persons who ought to be parties if complete relief is to be accorded between those already parties, but who are not joined, and shall state why they are omitted.
   Neither the Theuses nor Investment Enterprises and Padgett named Bell in their respective pleadings as a person who ought to be a party if complete relief is to be accorded between those already parties.

8. Civ.R. 12(b) provides in part that,
   [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except the following defenses may at the option of the pleader be made by motion: \* \* \* (7) failure to join an indispensable party.
   Appellants Investment Enterprises and Padgett did not assert this defense in their answer or by motion.

9. At the conclusion of the trial and just after the court had announced its decision, a rather inconclusive exchange took place between the court and counsel for appellants:
   MR. HOUSTON: I'm wondering about Mr. Bell for instance as a party. I wonder if he's entitled to \* \* \*
   THE COURT: But—well, his claim —his claim, of course, is against the corporation not \* \* \*.

In State, Department of Highways v. Crosby, 410 P.2d 724, 725–726 (Alaska 1966) (footnotes omitted), we held that our rule pertaining to necessary joinder of parties [10] recognizes the classifications of indispensable, necessary, and proper parties which were first developed in equity courts, and that

> [a]n indispensable party is one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party. The determination of indispensability or lack of it involves a discretionary balancing of interests. On the one hand, consideration must be given to the possibility of rendering a judgment that will have an adverse factual effect on the interests of persons not before the court, and to the danger of inconsistent decisions, the desire to avoid a multiplicity of actions, and a reluctance to enter a judgment that will not end the litigation. On the other hand, consideration must be given to the desirability of having some adjudication if at all possible rather than none, leaving the parties before the court without a remedy because of an 'ideal desire to have all interested persons before the court.' Courts exist for the determination of disputes, and they have an obligation in particular litigation to make meaningful determinations if at all possible.[11]

The case at bar presents circumstances involving different considerations from those in *Crosby* which must be weighed in determining the indispensability of Bell. In the instant case, the indispensable party issue did not unequivocally surface until the matter had reached the appellate level. There are significant differences between the situation which confronted the trial

---

10. Civ.R. 19 provides in part as follows:

(a) Necessary Joinder. Subject to the provisions of Rule 23, and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

(b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be made parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court, the court shall order them summoned to appear in the action. If jurisdiction over them cannot be acquired except by their consent or voluntary appearance, the court in its discretion may proceed in the action without making them parties, but the judgment rendered therein does not affect the rights or liabilities of absent persons.

11. In *Crosby* we held that under a reservation in the patent from the United States to plaintiff's predecessor in title of rights-of-way for roads constructed by the United States or the state, the United States is not an indispensable party in a suit to enjoin the state from entering the land. In *Crosby* we emphasized the potential denial of a remedy if the United States chose not to consent to be sued.

Other cases have touched on the issue of indispensable parties. Hardy v. Island Homes, Inc., 363 P.2d 637, 642–643 (Alaska 1961), holds that where a defendant trustee adequately represents its beneficiaries' interests, they are not indispensable parties. In Nordin v. Zimmer, 373 P.2d 738, 742 (Alaska 1962), this court held that while joint obligees are indispensable parties to an action against the obligor to enforce contract rights, a person not a joint obligee is not indispensable.

In applying *Crosby*, it was held in City of Fairbanks v. Electric Distribution Sys., 413 P.2d 165, 167 (Alaska 1966), that the United States, as mortgagee of a rural electric system, is an indispensable party to an action by a municipality to condemn part of the system. There we emphasized the United States' interest in assuring continuing electrical service to unprofitable remote areas by retaining some profitable densely populated areas. In Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 16–17 (Alaska 1969), we held that the State of Alaska was not an indispensable party where the adverse factual effect of the decision on its interests is limited to temporary disruptions of administrative routine, and the parties would not be exposed to later recovery by the state.

court at the pleading and trial stages and the situation now facing this court. At the appellate level we must consider the effect of Investment Enterprises' and Padgett's failure to raise the indispensable party issue at the trial level, and the significance of the fact that a judgment binding on the Theuses, Padgett, and Investment Enterprises, but not upon Bell, has already been entered.[12]

■ From the trial court vantage point, we conclude that Bell was an indispensable party and should have been joined. There is no question that the value, or potential value, of Bell's interest under the contract sought to be rescinded, consisting of one-third of the stock in Investment Enterprises, could have been substantially affected by a decree returning all of the realty to the Theuses. Bell's identity was known, he was available and actually testified at the trial, and could have been joined without creating any jurisdictional problems.[13] Thus, guided by *Crosby's* discretionary balancing of interests criteria in determination of indispensability, we conclude that Bell should have been joined while the matter was at the trial level.

■ Viewing the matter from the appellate vantage point, we conclude that the trial court's judgment should not be set aside despite the failure to join Bell. At this level of adjudication we must weigh, in addition to those factors held relevant in *Crosby*, the ramifications of appellants' failure to raise the indispensable party issue at trial, the significance of the fact that after trial a judgment, binding upon the Theuses, Padgett, and Investment En-

terprises was entered, and the justice and feasability of fashioning appropriate relief at the appellate level in order to lessen or avoid any substantial prejudice to Bell flowing from the trial court's judgment.[14]

The matter of appellants' failure to raise the indispensable party issue in the superior court will be first examined. At the trial stage, procedural means were available to appellants by which they could have avoided or lessened the dangers of multiple litigation and inconsistent relief.[15] After a completed trial in which appellants failed to assert these interests, we hold that they are now precluded from asking this court to weigh such factors as the dangers of multiple actions and inconsistent relief in deciding whether the lower court's judgment should be set aside.[16]

In *Crosby*, in discussing the interests to be balanced in reaching a determination as to indispensability, we noted the desirability of having, and the court's obligation to make, a meaningful adjudication of the dispute if at all possible. This interest encompasses somewhat broader considerations in the situation where the action has proceeded to judgment and the indispensable party issue is raised for the first time at the appellate level. For after trial, considerations of the public's and the court's interests in complete, consistent, and efficient settlement of controversies takes on greater relevance. The latter factor of efficient settlement necessarily includes the time and expense already incurred at trial. In addition to this element of time and expense, both the public and the Theuses now have a strong interest in preserving the

---

12. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109, 88 S.Ct. 733, 19 L.Ed.2d 936, 944 (1968).

13. The dangers of inconsistent decisions and multiplicity of actions were minimal at the trial posture of this litigation. These particular factors are discussed below at footnote 15 and text.

14. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936, 945 (1968).

15. In the case at bar, Bell could not sue the Theuses because their promise to convey ran only to the corporation. The risk of mulitiple litigation appears to be limited to Bell's possible action against Investment Enterprises. This action could not have been avoided by joinder of Bell at trial.

16. Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 109, 111, 88 S.Ct. 733, 19 L.Ed.2d 936, 946 (1968).

judgment which was obtained after a complete trial.[17]

■ Also to be considered at the appellate level are Bell's interests in the subject litigation, the impact of the judgment upon his interests, his ability to protect these interests, and the feasability and justice of our granting protective relief to Bell. It is clear from the record that Bell had an interest in the litigation. In the contract in question, Investment Enterprises promised to transfer to him one-third of its stock. Undoubtedly the value of Bell's stock would have been greatly diminished by a decree restoring all 12 parcels of realty to the Theuses.[18]

Bell, an Anchorage contractor, had associated with Jim Theus in several enterprises prior to the execution of the contract in question. Theus, Bell, and Padgett all agree that the primary purpose of the subject contract was to disentangle Theus' snarled financial situation, to liquidate his real properties, and to place the proceeds in a trust company the three had formed. Bell claims to have contributed to Invest-

ment Enterprises from $200 to $300 together with a promise by Theus to him of a 25 per cent interest in the Kenai Courthouse, then owned by Jim Theus. Bell further testified that it was contemplated he would work at developing the Theuses former properties and assist in selling them in return for his one-third interest in Investment Enterprises.

The record further reveals that Bell was aware of the difficulties Jim Theus was encountering in attempting to get Padgett to make the $10,000 loan to Investment Enterprises as promised. It is also clear that Bell knew of the instant litigation from its very inception, was aware of the scope of the relief the Theuses were seeking, and was cognizant of the litigation's potential impact upon the value of his stock and his ability to retain the same. Bell himself joined in some unsuccessful last minute pretrial settlement efforts, and at the trial testified against the Theuses and in support of Padgett's contention that the Theuses had agreed to a modification of the contract regarding Padgett's promised performance of a $10,000 loan.[19]  Bell,

17. *Id.*  390 U.S. at 111, 88 S.Ct. 733, 19 L.Ed.2d at 945–46.

18. In their complaint the Theuses requested that the contract be rescinded. While, in general, only those parties to a contract whose interests might be affected need be joined in an action based on the contract, nevertheless in actions for rescission, all parties are indispensable unless the interests of those present are completely separable from the interests of those absent. Shields v. Barrow, 58 U.S. (17 How.) 130, 139–140, 15 L.Ed. 158, 160 (1855); 3A J. Moore, Federal Practice ¶19.10, at 2345–48 (2d ed. 1970). However, "the court will 'strain hard' to find interests to be separable so that an action need not be dismissed," and where there is no danger of inconsistent judgments against a single res, not all the parties to a contract need be joined in an action for rescission. New England Mut. Life Ins. Co. v. Brandenburg, 8 F.R.D. 151, 154 (S.D.N.Y. 1948).

In the case at bar, although appellees' prayer requested that the contract be rescinded, the judgment entered did not rescind the entire contract. The judgment only ordered that the real property be re-

stored to the Theuses and a note from Jim Theus to Padgett be cancelled. The judgment could not rescind the portion of the contract in which Investment Enterprises promised Bell one-third of its stock because Bell was not a party to the action.

19. Bell admitted that he was in the office of counsel for appellees the day the instant action was filed, and that he was informed of the fact that suit was being filed. Bell testified that he said at that time he did not want to see the corporation dissolved. Jerry Bruton, a builder and developer who was also present at the time, testified that "Mrs. Simpson [appellees' counsel] suggested that all the property title be transferred back to Mr. Theus and Mr. Bell highly objected to this, stating that this would put his financial situation in jeopardy * * *." Bruton further testified that Bell suggested that Theus and he call a special meeting of the directors of Investment Enterprises, vote Padgett out of the corporation, and then transfer all of the properties back to Theus. Bruton further testified that on the eve of the trial Theuses' counsel drew up a notice of special meeting of the Board of Directors

with full knowledge of the scope and potential impact of this litigation upon his interests, chose not to intervene as a party, although he testified at the trial in support of Padgett's position in an effort to defeat the Theuses' action.[20] We therefore hold that appellants, by virtue of Bell's own inaction in failing to intervene in the litigation, should be estopped from asserting that Bell's interest in the present case requires that the judgment be set aside on grounds of failure to join an indispensable party.[21] Under the discretionary balancing of interests test governing determination of indispensability as articulated in *Crosby* and amplified in this opinion, the superior court's judgment should be affirmed. We reach this conclusion upon balancing the following interests. Investment Enterprises and Padgett are fore-

closed because of their failure to raise the indispensable party issue at trial from asking this court to weigh the dangers of their being subjected to inconsistent decisions or a multiplicity of actions. Further, because of the time and expense which have been involved in bringing the matter to judgment, the public and judicial interests in efficient settlement of controversies should be weighed. Additionally, both the public and now the Theuses have a strong interest in preserving this judgment which was obtained after trial. These interests when considered together with Bell's own actions have led us to the conclusion that considerations of equity and good conscience do not require that the judgment be vacated, or that protective relief be fashioned by this court in regard to Bell's stock interests in Investment Enterprises.[22] Bell had

of Investment Enterprises to carry out Bell's suggestions, that Bell signed the notice, but subsequently apparently changed his position and cast his lot with Padgett.

The notice of special meeting of the Board of Directors of Investment Enterprises which Bell signed read in part as follows:

> Notice is hereby given of a special Board of Directors meeting of Investment Enterprises, Inc. for the purpose of transferring the real property in the name of the corporation, for the purpose of recalling the president and election of a new president, and settling the case of Theus vs. Vern L. Padgett and Investment Enterprises, Inc. on behalf of the corporation.

20. Padgett's interests in the outcome of the litigation paralleled Bell's interests.

21. *Compare* Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 114, 88 S.Ct. 733, 19 L.Ed.2d 936, 947–948 (1968); Pennington v. Snow, 471 P.2d 370, 376 (Alaska 1970). Although it appears highly likely from the record that Bell would be collaterally estopped in future proceedings from raising questions actually decided in this case, we specifically decline to pass on this issue at the present time.

22. *Compare* Fed.R.Civ.P. 19 which originally paralleled Alaska's Rule 19, but was substantially rewritten in 1966. The new federal rule provides:

> Rule 19. Joinder of Persons Needed for Just Adjudication.
>
> (a) Persons to be Joined if Feasible. *A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.* If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.
>
> (b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent

ample, timely notice of the litigation and the implications it carried for his stock holdings in Investment Enterprises. Despite his knowledge of the scope of the relief sought in the litigation and the importance of the litigation in regard to his holdings in Investment Enterprises, Bell chose not to intervene as a party in the action. In such circumstances we cannot ascribe significant weight to any interest of Bell's which would tend to militate against preserving the fully litigated judgment which was obtained in the case at bar.

The judgment entered below is affirmed.

---

person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the persons' absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) (1)–(2) hereof who are not joined, and the reasons why they are not joined.

(d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.