**Laurence SYLVESTER, Appellant,**

v.

**Joan Elaine SYLVESTER, Appellee.**

**No. S–1094.**

Supreme Court of Alaska.

Aug. 15, 1986.

James E. Gorton, Jr., David P. Gorman, Gorton & Oberly, Anchorage, for appellant.

Lewis F. Gordon, A. William Saupe, Baily and Mason, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

## I. INTRODUCTION

Laurence Sylvester, plaintiff below, appeals from superior court Judge Victor D. Carlson's order striking a mortgage executed by Sylvester in favor of First Financial Futures Corporation ("FFFC"). Judge Carlson found that the mortgage violated his earlier orders not to permit recording of any encumbrances on Sylvester's property and constituted a fraudulent conveyance. On appeal, Sylvester directs the thrust of his attack at the court's "unseemly haste" in allowing a hearing only four days after defendant and appellee Joan Sylvester filed her motion to strike. He claims that the court's "precipitous" and "summary" actions deprived him of an evidentiary hearing on the motion's allegations. We agree, and reverse with instructions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Eight months after her March 23, 1981, divorce from Laurence Sylvester, Joan Sylvester petitioned for relief from that judgment. She claimed that Laurence had obtained her consent to their property settlement by misrepresenting ·his assets. Although her charges involved several transactions, the current dispute centers on Laurence's purchase of a million dollar estate in Lahaina, Hawaii, four months after the divorce.

Discovery into the allegations of Joan's petition dragged on for nearly three years due largely to Laurence's "wilful failure" to cooperate. Indeed, the court imposed $171,250 in sanctions for Laurence's misconduct. Finally, on October 4, 1984, Joan moved both for an evidentiary hearing on her requested relief from judgment and for an order to show cause on Laurence's refusal to pay the ordered sanctions. These motions triggered a week long flurry of activity involving the Lahaina property, which ultimately set the stage for the current appeal.

On October 12, 1984, Joan's motions came before superior court Judge Victor D. Carlson for hearing. Laurence's counsel requested a four day continuance because of his client's unavailability. Joan's attorney charged that Laurence was stalling for time to liquidate assets to prevent execution of any judgment. The court granted the continuance. Judge Carlson, however, ordered Laurence not to convey or encumber the property, nor to record or permit any such encumbrance until further order.

Unbeknownst to the court and to the others present, Laurence had executed a $691,000 mortgage on the Lahaina property on October 11, 1984. The mortgage to FFFC purportedly secured Laurence's note for $691,000. The mortgage stated that Laurence had executed this note three years before, in June 1981; that date was just prior to his purchase of the Lahaina estate.

On October 16th, Judge Carlson heard the continued motions. Laurence failed to appear. His attorney explained that Laurence's tax lawyer had advised Laurence that his testimony might jeopardize his position in pending IRS prosecutions. The court then orally granted all of Joan's requested relief and also held Laurence in contempt.

The following day, October 17, 1984, Judge Carlson signed detailed findings and conclusions and entered a judgment of

$842,000 for Joan. He specifically found that Laurence had financed the million dollar Lahaina purchase by a $300,000 mortgage to the sellers and by $700,000 in cash or mortgages of *other* assets. He further found that Laurence had continually and deliberately concealed and misrepresented his assets and was attempting to liquidate them to avoid his obligations to Joan. The judgment also reiterated the prior order banning further encumbrances of Laurence's property. Laurence never appealed from the October 17th judgment.

The following morning, October 18, 1984, someone recorded the mortgage from Laurence to FFFC. That afternoon, Joan had the October 17th judgment recorded in Hawaii. On June 24, 1985, Joan moved to strike the mortgage both as a violation of the October orders and judgment and as a fraudulent conveyance. FFFC was not made a party to Joan's motion.

At a shortened time hearing on June 28th—only four days after Joan filed her motion to strike—Laurence's counsel again requested a continuance. He claimed that his inability to contact Laurence made him unable to respond to the charges of Joan's motion to strike. Judge Carlson denied the motion to continue "because it appears from the facts that Mr. Sylvester, while receiving a continuance in the earlier hearing, was busy engineering this, quote, 'mortgage,' unquote." The court then ruled that the Lahaina mortgage was "null and void" and ordered that "said mortgage shall be removed as an encumbrance" from the property. Laurence then appealed from this ruling.

## III. DISCUSSION

### A. *The Trial Court Erred by Refusing to Grant Laurence a Continuance*

Laurence claims that the trial court abused its discretion by not granting the continuance on June 28, 1985. He admits

that he did not raise the issue in his points on appeal. Nevertheless, he argues it as an alternative to a due process challenge he included in the points on appeal.[1]

Under *Mullen v. Christiansen*, 642 P.2d 1345, 1350 (Alaska 1982), this court may review an issue raised at trial and adequately briefed on appeal even if not mentioned in the points on appeal as long as "opposing counsel are sufficiently apprised of the issue." Laurence asked Judge Carlson for a continuance. Both his brief and Joan's brief argue the issue. We will review his challenge.[2]

Laurence's counsel contended that he needed time to contact Laurence in order to respond to the new allegations in Joan's motion to strike. He claims that the trial court erred by finding a fraudulent conveyance and a violation of the October 17th judgment without a trial or evidentiary hearing on the allegations.

Denial of a continuance is within the trial court's discretion. *Siggelkow v. Siggelkow*, 643 P.2d 985, 986 (Alaska 1982). A party demonstrates an abuse of discretion when " 'deprived of a substantial right or seriously prejudiced.' " *Id.* (quoting *Barrett v. Gagnon*, 516 P.2d 1202, 1203 (Alaska 1973)). Each case turns on its own circumstances. *Siggelkow*, 643 P.2d at 987. The trial court must balance the needs for due promptness with the rights to fair presentation of the case. *Id.*

In granting Joan's motion to strike without holding a further evidentiary hearing, Judge Carlson effectively treated her motion as one for summary judgment. He implicitly ruled that the record then before him conclusively demonstrated both a violation of the October orders and a fraudulent conveyance. We disagree. Although the circumstances surrounding the execution and recording of the mortgage invite skepticism of Laurence's claims, the record be-

---

1. Laurence's third point on appeal states:
   Superior Court violated Plaintiff's due process rights by failing to grant Plaintiff's Motion to Continue the hearing on Defendant's Motion to Invalidate Mortgage.

2. Inclusion of Laurence's due process point adequately alerted Joan to the abuse of discretion issue.

fore Judge Carlson at the June 28th hearing does not conclusively establish an improper conveyance.[3] The failure to allow Laurence time to prepare and present a case at a full evidentiary hearing severely prejudiced his ability to defend the charges raised in Joan's motion to strike. Laurence deserves an opportunity to present a defense.

The record does not conclusively demonstrate a violation of the October orders not to "permit" the recording of additional encumbrances on the Lahaina property. Laurence executed the mortgage on October 11th, one day *prior* to the order not to encumber or permit an encumbrance. Someone recorded the mortgage on October 18th. Laurence claims that the record does not demonstrate that *he* had the mortgage recorded in violation of the court's order. Indeed, nothing on the face of the recorded documents demonstrates Laurence's connection to their recording.

Joan claims, however, that Laurence must have permitted the mortgage's recording through his position as president and one of only two directors, shareholders and incorporators of the mortgagee, FFFC. The circumstances strongly implicate Laurence in the recording. Nevertheless, the record contains no direct evidence that Laurence permitted the mortgage's recording. Although the record demonstrates Laurence's importance to FFFC, it does not document the business relationship between Laurence and FFFC's other shareholder-director. Nothing in the record describes the authority each shareholder-director exercised over this transaction. If FFFC's other shareholder-director ordered the mortgage recorded over Laurence's objections, Laurence could not be held in contempt for "permitting" the mortgage's recording in violation of the October orders. We conclude that material facts remain disputed over the mortgage's recording.

In addition to finding a violation of the October orders, Judge Carlson apparently believed that sufficient indicia of fraud existed in the record to find a fraudulent conveyance as a matter of law. He therefore did not continue the case to allow an evidentiary hearing. Again, however, we disagree with his conclusion.

■ The law of the situs of real property governs the determination of a fraudulent conveyance. 37 Am.Jur.2d *Fraudulent Conveyances* § 110, at 791–92 (1968); 37 C.J.S. *Fraudulent Conveyances* § 3, at 852–53 (1945). Thus, here, the Hawaii law of fraudulent conveyances governs.

No Hawaii court has examined the badges of a fraudulent conveyance since territorial days. Below, Joan cited a territorial court's decision discussing the traditional badges of fraud.[4] *Achiles v. Cajigal*, 39 Hawaii 493 (Hawaii 1952) (cited in 37 Am.Jur.2d *Fraudulent Conveyances* § 11, at 702 n. 16). The Hawaii territorial court recognized eight badges of fraud:

1. The transferor is indebted or insolvent;

2. The conveyance in general, i.e., that the debtor's entire estate is diminished, thereby leaving him insolvent;

3. Consideration for the conveyance is absent;

4. The conveyance is secret and concealed;

5. The conveyance is made to a family member or to one of close relationship;

6. The conveyance is made while a suit against the debtor is pending or threatened;

7. The transferee takes the property in trust for the debtor;

8. The debtor remains in possession, reserves the use and benefit, and deals with the property as his own.

---

**3.** In reviewing a grant of summary judgment, we must draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985). We apply the same standard here.

**4.** Joan does not urge Hawaii law before this court; rather, she assumes that Alaska law governs.

*Id.* at 497. These badges represent common law distillations of factors frequently present in fraudulent coveyances. *See* 37 Am.Jur.2d *Fraudulent Conveyances* § 10, at 701. Courts commonly recognize these factors. *See id.,* §§ 10–14, at 701–04.[5] There is no reason to believe that Hawaii would not still recognize such factors.

The mere presence of "badges of fraud," however, will not invalidate a transaction.

> Badges of fraud must be viewed within the context of each particular case, and where their presence is satisfactorily accounted for, or where their existence is not inconsistent with a construction of the transaction as a valid one, they deserve to be accorded little weight.

*Blumenstein v. Phillips Insurance Center,* 490 P.2d 1213, 1223 (Alaska 1971) (footnote omitted). Thus, even if the record conclusively established the badges of fraud, we would not invalidate the conveyance merely because Laurence preferred to pay FFFC rather than Joan. An insolvent debtor may legally prefer one creditor over others. *Id.* at 1221–22. To invalidate the transfer as a fraud, the record should demonstrate that FFFC is not a bona fide creditor. *See generally id.* at 1220–22 (discharge of valid underlying debt formed consideration sufficient to rebut any presumption of fraud in preference of one creditor over plaintiff).

Here, the record before the trial court neither conclusively eliminated FFFC as a bona fide creditor nor demonstrated the badges of fraud. We will not presume that FFFC was a sham creditor merely because Laurence is half owner, president and co-director. As outlined above, the record contains no evidence about either FFFC's business affairs or the relationship between Laurence and his co-director. We cannot presume that FFFC did not properly loan Laurence the funds in 1981 or seek the mortgage in 1984.

The record also fails to establish conclusively most of the badges of fraud. First, although Laurence's counsel admitted that Laurence was in "dire financial straits," this establishes only that he was in trouble, not insolvent. Second, the record does not conclusively establish that the Lahaina mortgage left Laurence insolvent; the only evidence on the record is Laurence's counsel's "belief" that the Lahaina property was Laurence's only remaining asset. Third, the mortgage itself recites the antecedent note as consideration.[6] An antecedent debt is sufficient consideration for a subsequent mortgage. *See Mohar v. McLelland Lumber,* 95 Idaho 38, 501 P.2d 722, 725 (1972). Fourth, the conveyance was not "secret" since recorded within a week of execution. Fifth, the transferee did not take in trust. Sixth,

---

**5.** Alaska recognizes substantially similar badges:
1. the consideration was inadequate;
2. the transfer of the property was in anticipation of a pending suit;
3. the transferor was insolvent;
4. there was a failure to record the instrument within a reasonable length of time;
5. the conveyance was a transfer of all or substantially all of the debtor's property;
6. the retention of possession of the premises by the grantor from the date of the execution of the instrument stands unexplained;
7. the transfer so completely depleted the debtor's assets that his creditor has been hindered and delayed in recovering her judgment; and
8. the relationship of the parties.

*First National Bank of Fairbanks v. Enzler,* 537 P.2d 517, 522 (Alaska 1975).

**6.** The October 17th judgment expressly precluded Laurence from arguing that he financed the Lahaina purchase in any way other than with cash or by mortgaging other assets. Because Laurence refused to provide discovery as to the Lahaina financing, the court ruled that Laurence was precluded from asserting any source of funds other than cash generated during the marriage or from mortgages of other parcels. Thus, the judgment would prevent Laurence from asserting FFFC's loan as the source of the Lahaina funds unless the loan, in turn, was indirectly funded by cash generated during Laurence's marriage. The court further banned claims of additional encumbrances on the Lahaina property. Laurence did not appeal this judgment and thus is bound by it. Nevertheless, the October 17th judgment does not preclude FFFC from litigating the bona fides of its purported loan to Laurence since FFFC was not a party to the judgment.

mortgagors properly remain in possession of mortgaged premises.

■ Only two badges recognized by Hawaii are unequivocally present. First, Laurence executed the mortgage to a corporation he half-owned, and served as incorporator, co-director and president. FFFC was thus "closely related" to Laurence. Yet, as outlined above, the record does not contain sufficient evidence of FFFC's business affairs to determine conclusively that FFFC was Laurence's alter ego. Laurence's co-owner and director may have legitimized this transaction. Second, the conveyance occurred in the midst of litigation over the very parcel conveyed. By themselves, however, these two badges of fraud do not establish conclusively that the conveyance to FFFC was a sham intended to defraud Joan's rights.

■ Joan urges that the trial court properly acted quickly to prevent further fraud. We recognize that a trial court must have the authority to prevent and correct abusive requests for continuances. The record before Judge Carlson demonstrated Laurence's repeated delays and disobedience of judicial orders. Indeed, Judge Carlson specifically denied Laurence's June request because during the October 12th to 16th continuance, Laurence was "engineering" the very mortgage challenged by Joan.

In a proper case, a trial court may act quickly where necessary to prevent further fraud. But such haste was unnecessary here. The execution and recording of the mortgage was *fait accompli*. There was no evidence of irreparable harm to Joan to wait for a short continuance and evidentiary hearing. Moreover, the trial court could protect its authority equally well by holding Laurence in contempt *after* Joan demonstrated in a full hearing any violation of the October orders.

We stress that we base our decision on the trial court's implicit conclusion that the record demonstrated fraud and violations of orders as a matter of law. The trial court ruled only four days after Joan filed her motion to strike. Laurence's counsel had no opportunity to contact his client, much less prepare a defense at a full evidentiary hearing. The unique posture of this case, tantamount to a grant of summary judgment to Joan without any chance for Laurence's opposition, requires us to draw all reasonable inferences in Laurence's favor.[7]

Fraud ordinarily presents questions for the trier of fact. *See, e.g., First National Bank of Fairbanks v. Enzler*, 537 P.2d 517, 521–22 (Alaska 1975). Here, Judge Carlson implicitly ruled that no material questions of fact remained for a trial. We believe, however, that material questions remain involving FFFC's status as a bona fide creditor. Thus, we must reverse and remand.

■ To avoid further disputes on remand over two issues raised on appeal, we wish to instruct the trial court on joinder and jurisdiction. Upon remand, the court should join FFFC as a necessary party under Civil Rule 19(a).[8] As an Alaska corporation, FFFC is subject to service of process in the superior court. Both longstanding common law and cases arising under comparable versions of Civil Rule 19 hold a grantee of an alleged fraudulent conveyance indispensable to a proceeding to strike the transfer. *See, e.g., Dameron v. Deer*, 88 F.R.D. 577, 582–83 (N.D.Ga.1980) (Fed. R.Civ.P. 19(a)); *Wood v. Elling Corp.*, 20

---

7. *See supra* note 3.

8. Rule 19(a) states in part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party.

Cal.3d 353, 142 Cal.Rptr. 696, 698 n. 2, 572 P.2d 755, 757 n. 2 (Cal.1977); *Johnson v. Johnson,* 572 P.2d 925, 926–27 (Nev.1977) (decided under identical Nev.R.Civ.P. 19(a)); 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1621, at 213 (1972); 3A J. Moore & J. Lucas, Moore's Federal Practice ¶¶ 19.09[5] & [6], at 19–186 to 19–192 (2d ed. 1985) (federal rule) (hereafter cited as "Moore's"); 37 Am.Jur.2d *Fraudulent Conveyances* § 202, at 861; 37 C.J.S. *Fraudulent Conveyances* § 345 at 1176; *see generally* Annot., 24 A.L.R.2d 395, 422–24 (1952).[9] Thus, the trial court should join FFFC.[10]

[12–14] The joinder of FFFC will obviate any practical problems concerning the trial court's jurisdiction to affect title to Hawaiian property. Both parties correctly assert that an Alaska court lacks subject jurisdiction to change or directly affect title to property situated in another state. *Peter Pan Seafoods v. Stepanoff,* 650 P.2d 375, 377 (Alaska 1982). Nevertheless, a court may indirectly affect title to property located in another state through its power over individuals under the court's jurisdiction. *Fall v. Eastin,* 215 U.S. 1, 8–12, 30 S.Ct. 3, 6–8, 54 L.Ed. 65, 69–71 (1909).

In its June 28, 1985 order, the trial court concluded:

19. The recordation of the purported Mortgage as Land court Document No.

1263069 on October 18, 1984 in the Land Court of the State of Hawaii in which the Mortgage purported to encumber the Lahaina Property is *null and void,* and said mortgage *shall be removed as an encumbrance* from Transfer Certificate of Title No. 234,416.

(Emphasis added). As Joan admits, the conclusion that the mortgage is "null and void" directly purports to try title to Hawaiian property. Moreover, the order to remove the encumbrance is vague; it fails to specify who must remove the encumbrance. The trial court may indirectly affect title to foreign land by properly ordering a party before it to execute or cancel a conveyance to such land. *Fall v. Eastin,* 215 U.S. at 8–12, 30 S.Ct. at 6–8, 54 L.Ed. at 69–71. If upon remand the court again concludes that the mortgage defrauded Joan, it should merely order FFFC to reconvey the mortgage to Laurence and to record the reconveyance.

We REVERSE and REMAND and instruct the trial court to join FFFC as a defendant to any further proceedings involving the Lahaina mortgage.

---

**9.** Cases cited in some authorities hold that a bona fide mortgagee of property fraudulently conveyed need not be joined. *See, e.g.,* 37 Am. Jur.2d *Fraudulent Conveyances* § 207, at 865; 37 C.J.S. *Fraudulent Conveyances* § 346(e), at 1177; Annot., 24 A.L.R.2d 395, 445–48. These cases, however, do not involve fraudulent mortgages; rather, they involved other fraudulent conveyances of property previously or subsequently encumbered. Where the fraudulent conveyance is the grant of the mortgage itself, the general rule should apply and the grantee-mortgagee thus joined as a party. *Cf. Moore's,* ¶ 19.09[6], at 19–191 (the mortgagee is the proper party).

**10.** Because we have reversed on other grounds, we need not decide whether the trial court erred by not joining FFFC. Had Laurence raised the issue below, Judge Carlson should have joined FFFC. From the trial court's perspective, FFFC meets the requirements of Civil Rule 19(a). *See*

*supra* notes 5—6 & accompanying text. Laurence, however, failed to object below to FFFC's absence.

Failure to raise below the lack of joinder of an indispensable party does not foreclose the objection on appeal. *Padgett v. Theus,* 484 P.2d 697, 700 (Alaska 1971) (appellate court may consider the issue). An appellate court, however, must consider factors not present when a trial court considers indispensability. *Provident Tradesmens Bank & Trust v. Patterson,* 390 U.S. 102, 109–11, 88 S.Ct. 733, 737–38, 19 L.Ed.2d 936, 945–46 (1968) (Fed.R.Civ.P. 19(a)); *see Padgett,* 484 P.2d at 702–05. A party indispensable from the trial perspective may be found dispensable if nonjoinder is not raised until appellate review. *Id.*

We express no opinion on FFFC's nonjoinder for purposes of this appeal. Nevertheless, since we remand on other grounds, the trial court should join FFFC to any further proceedings involving the Lahaina mortgage.